Argued July 7, affirmed November 7, petition for rehearing
denied December 16, 1969. Petition for review denied
by Supreme Court February 17, 1970

## STATE OF OREGON, *Respondent, v.*
## FREDDIE MICHAEL MERSHON,
*Appellant.*
### Case No. C-49293
460 P. 2d 363

*Douglas M. Fellows,* Portland, argued the cause for appellant. With him on the briefs was Eugene L. Parker, Portland.

*Billy L. Williamson,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

FORT, J.

The defendant was convicted of armed robbery. On this appeal he raises three assignments of error. We will consider them in the order assigned.

The first arises out of the refusal of the court to allow a motion for

"* * * a jury view coupled with an experiment, or a jury view coupled with a demonstration or a jury view alone."

The robbery was committed about 2:30 a.m. on September 9, 1967, in a parking lot which served a tavern

located at 18th and Lovejoy in Portland. The tavern, together with a drive-in "burger" restaurant, occupied a half block with their parking lots contiguous, and together extending through the entire block behind the two business premises. The date of the trial was January 4, 1968. The defense was based on alibi. The fact issue concerned the identification of the defendant as the robber. Defendant, during the testimony of a private investigator called by him during his case in chief, made the above motion. The motion was first allowed. The jury view was planned to be held that night after dark. There was no objection by the state.

However, the same day, at the completion of the testimony offered by the defendant through his private investigator, and thereafter by the manager of the drive-in concerning the physical layout and the nature of the lighting at the time and place of the offense, the court stated,

"* * * I am going to exercise my discretion to deny your motion * * *."

and set forth its reasons for so doing. These included the making of the motion after the state had rested and the defendant's case in chief was well in progress, instead of at the beginning of the trial; that a jury view serves only as an aid to the jury in understanding the evidence as it is introduced at a trial, as distinguished from being evidence itself; the difference in the time of year and in weather conditions; and particularly the additional evidence produced during the afternoon by the defendant on the issue for which the view and experiment were sought.

Concerning the latter, defense counsel, when the court concluded its ruling on the motion, stated,

"No, I appreciate your concern about that, Your

Honor. And I won't argue the question. I think with Mr. Beecher's testimony in at least now, that that helps the jury understand that that is in fact a very dark, poorly lighted lot *and that is about as much as I hoped to accomplish* \* \* \*." (Emphasis supplied.)

■ The general rule is well established that the granting of a jury view is within the sound discretion of the trial court and will not be upset except for a clear abuse of that discretion. *State of Oregon v. Black,* 193 Or 295, 236 P2d 326 (1951); *Natwick v. Moyer,* 177 Or 486, 163 P2d 936 (1945); *Cox v. Rand,* 155 Or 258, 262, 61 P2d 1240 (1937). A like rule governs the granting of motions to conduct demonstrations outside the courtroom. *State v. Sack,* 210 Or 552, 300 P2d 427 (1956), cert den 353 US 962, 77 S Ct 1048, 1 L Ed 2d 912 (1957). We hold that there was no abuse of discretion here.

■ The second assignment of error is based on the fact that the court permitted evidence that the defendant had no permit to carry a concealable weapon. Defendant contends that this was unduly prejudicial. The indictment included an allegation that the defendant, "not having a license or permit to carry said pistol," committed the crime in question.

ORS 166.230(1) provides for an enhanced penalty up to ten years that may be imposed upon any person committing

"\* \* \* any felony within this state while armed with any pistol, revolver, machine gun or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm \* \* \*."

The Supreme Court in *State v. Blacker,* 234 Or

131, 136, 380 P2d 789 (1963), in construing that statute, stated,

> "* * * [T]he facts constituting the aggravation of an alleged offense must be set forth in the indictment * * *."

The defendant points to *State v. Engeman*, 245 Or. 209, 420 P2d 389 (1966), in support of his position. There a defendant was charged with sodomy committed while he was in possession of a concealable firearm for which he had no license or permit. That case holds simply,

> "* * * Had there been a total failure of proof that the defendant had in his possession a prohibited firearm * * *." (245 Or at 212),

it would still not prevent a defendant from being convicted of the felony charged, though it would not then support the imposition of an enhanced penalty under ORS 166.230(1).

It is true, as defendant claims, that the question whether or not the defendant was licensed to carry a revolver went only to the authority of the court to impose an enhanced penalty under ORS 166.230. Nevertheless, we think the state had a right to offer this evidence which related to a material averment in the indictment and upon the establishment of which the right to imposition of an enhanced penalty depended. We note, too, that the evidence was put in by stipulation without having to call witnesses to establish it, thereby avoiding unnecessary emphasis. The assignment of error is without merit.

■ The third assignment of error arises out of the testimony of two witnesses who were allowed to make in-court identifications of the defendant although each

had identified the defendant at a lineup procedure, which the court, following a hearing held prior to the impaneling of the jury, found to have been unlawfully conducted. It was so held only because the defendant was not adequately afforded his right to have counsel present thereat. The defendant moved to suppress the in-court identification by these witnesses because each was tainted by the illegal lineup. He did not contend that the lineup procedures employed were otherwise unfair in any particular.

In this case the court held a separate hearing before the jury was impaneled to determine whether or not evidence of the lineup identification by the witnesses was admissible. This was a proper procedure. The defendant himself testified at this hearing.

At the conclusion of that hearing the court found "by clear and convincing evidence" that the state had established,

> "The witnesses, Charles Benedetti and Cathryn Slade, are able to make an in-court identification of the defendant based upon observations of the defendant other than the lineup identifications and that the in-court identifications of the defendant have an independent origin, and
> "Further, that the evils present in the recent Supreme Court of the United States decision in *United States v. Wade*, 388 US 218, 87 Sup Ct 1926, 18 L ed 2d 1149 and its companion cases were not present under the factual circumstances present before the Court in the instant case."

The witness Benedetti was the victim. He was robbed by an unmasked man wearing a hat and coat. It is not contradicted that, having started the motor, he was seated in his car in the parking lot behind Rosini's restaurant and bar when a man approached

the driver's side of his car at approximately 2:30 a.m. The car window was down. The man pointed a revolver at him, demanded his money, entered the car, required Mr. Benedetti to move across the front seat, sat down beside him and compelled him to give up his wallet and the cash he had in his pocket. The robber then left.

In approaching the victim's car, the robber walked through the parking lot, passing directly in front of a second car parked in the lot at a distance estimated at from approximately 25 feet to 50 feet from the victim's car. The witness Slade was seated in the front seat of this car with another person. They heard the robber demand the victim's money and saw him get into the car.

The defendant was arrested shortly after the robbery while still riding in the car identified by another witness as the "getaway" car. The challenged lineup identifications of the defendant were held within four hours after he was arrested.

At the trial itself, the state offered no testimony concerning the lineup or the identification of the defendant therein. The defendant elected to ask no questions of either of the two witnesses concerning whether or not they had previously identified him at a lineup. A third witness to the robbery also identified the defendant at the trial. He had failed to identify him at the lineup.

We have carefully examined the evidence concerning the lineup and have applied to it those factors suggested in *Wade,* supra, and *Gilbert v. California,* 388 US 263, 87 S Ct 1951, 18 L Ed 2d 1178 (1967), as giving rise to possible unfairness which can arise in lineup procedures, and from which the possibility of

tainting an in-court identification may be reasonably inferred, including those described in *State v. Mershon*, 1 Or App 305, 459 P2d 551, decided by this court October 10, 1969, *review denied* (1970).

We conclude that the record supports the trial judge's conclusions that the evidence clearly and convincingly established both that the lineup was fairly conducted and that the in-court identification by each witness had an origin which was both independent of that witness's lineup identification and substantially untainted by it.

The last assignment of error is without merit. The motion to suppress the in-court identification of the defendant by the witnesses Benedetti and Slade was properly denied for the reasons set forth above.

The judgment is affirmed.