459 P.2d 551 (1969)
STATE of Oregon, Respondent,
v.
Freddie Michael MERSHON, Appellant.
No. C-49201.
Court of Appeals of Oregon.
Argued and Submitted July 7, 1969.
Decided October 10, 1969.
Eugene L. Parker, Portland, argued the cause and filed the brief for appellant.
Billy L. Williamson, Deputy Dist. Atty., Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, Dist. Atty., Portland.
Before SCHWAB, C.J., and FOLEY, FORT and BRANCHFIELD, JJ.
FORT, Judge.
Defendant was convicted of the crime of armed robbery. The questions presented on this appeal arise out of the lineup procedure used by the state during the preindictment stage. The chronology necessary to an understanding of the questions presented may be summarized as follows: On August 19, 1967, an armed robbery of Scotty's Market, committed jointly by two men, took place. On August 25, Dennis Lee Kniss was charged by an information with the crime. Sometime between August 19 and September 9, the defendant was taken into custody by the police on a totally unrelated charge. On September 9, while in custody, a lineup identification in which the defendant appeared was held. Shortly thereafter he was released from custody. The defendant was indicted, together with Kniss, on September 29 and arrested and taken into custody on this charge October 3. He was not represented by counsel in this matter prior to that time. He first appeared with counsel at the arraignment.
The sole testimony relating to the matter of counsel at the lineup was offered by *552 Police Officer Gates. Defendant was not advised of the reason for the lineup nor that it related to the robbery of Scotty's Market, nor had the defendant been charged in connection therewith. The defendant had not employed an attorney, nor had one been appointed for him in connection with this matter at that time. At the time of the lineup the officers advised the defendant he had the right to have counsel present. The defendant asked if he could use the telephone, made a phone call and told the officer he had called an attorney. At no time in the record of this case does it appear that this attorney ever was appointed or employed to represent the defendant. Indeed the state does not so contend. The officer testified that following the phone call, defendant told him that the attorney
"* * * stated he would not come to the police station for a lineup, but he advised the defendant he didn't have to stand in a lineup either."
Following the conclusion of the phone call, the lineup was held. Two of the three witnesses who later testified at the trial regarding the identity of the defendant as one of the robbers were present at the time of the lineup and identified the defendant at that time.
The Supreme Court, in United States v. Wade, stated:
"* * * [O]ur cases have construed the Sixth Amendment guarantee to apply to `critical' stages of the proceedings * * *." 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967).
In that case the court held that the eliciting of identification evidence in the lineup procedure is a critical stage of a criminal proceeding, and that, therefore, a defendant has a due process right to have counsel present at such procedure. The court there held:
"* * * Thus both Wade and his counsel should have been notified of the impending lineup, and counsel's presence should have been a requisite to conduct of the lineup, absent an `intelligent waiver' * * *." 388 U.S. at 237, 87 S.Ct. at 1937. See also Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
Here the defendant had no attorney. The one he called refused to appear. The lineup was then held. This is all that the record shows.
The general rule originally laid down in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938), is reiterated in Carnley v. Cochran, 369 U.S. 506, 514, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962), as follows:
"`It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights."'"
We are not unmindful of the difficulty the state, in the absence of an intelligent waiver, may face when, as here, a "focal suspect," for whatever reason, is without counsel, or when the defendant's previously retained or appointed counsel cannot be reached or will not attend the lineup. Like the Supreme Court of the United States in United States v. Wade, supra, we, too,
"* * * leave open the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay * * *." (388 U.S. at 237, 87 S.Ct. at 1938),
since here the defendant had no counsel at all.
We may, however, point out that the prompt availability in such situations of a public defender might do much to obviate the difficulties of conscientious law enforcement.
We hold that here there was no express or implied waiver by the defendant *553 of the right to have counsel present at the lineup.
It does not, however, necessarily follow that because the lineup procedure here was not lawfully carried on, the defendant is entitled to a judgment of acquittal or to a new trial. United States v. Wade, supra; Gilbert v. California, supra; People v. Caruso, 68 Cal.2d 183, 65 Cal. Rptr. 336, 436 P.2d 336 (1968); People v. Feggans, 67 Cal.2d 444, 62 Cal. Rptr. 419, 432 P.2d 21 (1967).
The question remains whether the in-court identifications of the defendant by witnesses who observed and identified him at the lineup should have been excluded at the trial. This in turn depends upon whether or not the in-court identification was tainted by the lineup procedure or
"* * * whether the in-court identifications had an independent origin * * *." United States v. Wade, supra, 388 U.S. at 242, 87 S.Ct. at 1940.
In that case the Supreme Court held first that the measure of proof in establishing such independent origin was "by clear and convincing evidence", and second, that the proper test to be applied is whether the in-court identification
"`* * * has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint' * * *." 388 U.S. at 241, 87 S.Ct. at 1939.
This in turn
"* * * requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U.S. at 241, 87 S.Ct. at 1940.
In this case, unlike Wade, the trial court did carefully consider both the circumstances of the lineup procedure and the "taint," if any, of each witness's participation therein upon his in-court identification of the defendant.
Concerning the former, the court expressly found
"* * * [T]here was nothing unfair about the lineup as such * * *."
Our Supreme Court has held:
"Police station lineups, properly conducted, are an acceptable criminal investigative procedure, [Citing cases] and, in fact, fairer and more trustworthy than the isolated exhibition of a suspect to the victim * * *." State v. Nunes, 86 Or.Adv.Sh. 1347, 1352, 444 P.2d 542, 545 (1968).
Concerning the latter, the court found as to each witness concerned that it was not "based upon the lineup identification."
Four witnesses who were in Scotty's Market at the time of the commission of the crime testified at the trial. One, Mr. Mewhinney, the store manager, from whom a portion of the money was taken, stated he could not identify the defendant as he never saw his face. He did identify the other robber who took the money from him after compelling him to open the safe.
The second, Myers, a clerk who had just gone off duty, was standing at a check stand immediately adjacent to one from which the defendant took money. He was within two feet of the defendant at that time and identified the defendant at the trial. He was not present at the lineup procedure at all.
The third, Mrs. Mewhinney, observed the defendant during the robbery from a distance of about three feet. She positively identified the defendant at both the lineup and the trial. She stated that she was able to identify him at the trial independent of the lineup. When confronted by a "look-alike" witness produced by the defendant, *554 she steadfastly adhered to her identification of the defendant.
The fourth witness, Walton, was the clerk on duty at the check stand from whom the defendant, at a distance of two feet, took the money in that till. He was present at the lineup and identified the defendant there. At the trial, however, after initially identifying the defendant, when confronted by a "look-alike" witness produced by the defendant, stated that he could be mistaken but that he felt the defendant was the man who robbed him.
Against this factual background it seems appropriate to consider as tests the concerns suggested in United States v. Wade, supra, as giving rise to possible unfairness which can arise in lineup procedures.
(1) Each witness had a substantial opportunity to observe the defendant. Here the two witnesses who observed the defendant at the lineup were, during the time of the commission of the crime, respectively within two feet and three feet of him. Both witness and defendant were standing still in a well lighted area. In each instance, the opportunity for observation extended over a substantial period of time.
(2) No significant discrepancy between any prelineup description given by the witness and the defendant's actual description appeared.
(3) Neither witness had, prior to the lineup, identified any other person as the robber.
(4) There is nothing to indicate whether either witness identified the defendant by picture prior to the lineup. We assume neither did.
(5) Neither witness failed to identify the defendant on any prior occasion.
(6) The period of time between the robbery and the lineup was approximately three weeks.
(7) The photograph taken of the lineup reveals no unfairness. All the persons in it were of the Caucasian race, as is the defendant. No contention is made concerning any procedural abuse in the conduct of the lineup. One of the two witnesses who identified the defendant at the lineup at the time of the trial candidly admitted that the "look-alike" person presented at the trial could possibly have been the robber. Thus at the time of the trial one of the two witnesses present at the lineup was less positive about his identification of the defendant than at the time of the lineup, thus indicating that his in-court identification of the defendant was clearly independent of the lineup.
(8) The photograph of the lineup indicated that several of the persons in it had physical characteristics similar to the defendant. Here none of the persons in the lineup were known to either of the witnesses present there. All of the persons, including the defendant, in this lineup were dressed in similar casual street clothes. In this case the defendant was not exhibited to the witnesses alone, but only together with the others in the lineup. The defendant was not pointed out to the witnesses as the suspect, either before or during the lineup. All persons in this lineup were asked to say the same statement, "Don't look at me." However, no clothing or other item which fitted only the defendant was used in the lineup procedure.
(9) At the time of the lineup the identification of the defendant by each witness was not done in the presence of any other witness.
(10) The defendant was not presented before the witnesses either alone or in handcuffs at any time.
We believe that the evidence clearly and convincingly supports the trial judge's conclusions both that the lineup was fairly conducted and that the in-court identification by each witness had an origin which was both independent of that witness's lineup identification and substantially untainted by it.
It follows then that the motion of the defendant to strike the in-court identification of the witnesses present at the lineup was properly denied. The judgment is affirmed.