Argued September 20, reversed and remanded November 11, 1971

STATE OF OREGON, *Respondent, v.*
RODOLFO LEOS, aka RODOLFO LEOS
TAMBUNGA (No. 1742-C), *Appellant.*

490 P2d 521

212

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendant was convicted of manslaughter. On appeal he contends that the trial court erred in (1) convicting the defendant by a 10-2 jury verdict; (2) instructing the jury as to disputable presumptions that they were required to find the presumed facts unless they were outweighed or equaled by other evidence; and (3) instructing the jury on excusable homicide

without clearly distinguishing between self-defense and excusable homicide.

On May 23, 1970, defendant and his wife were in Caldwell, Idaho, for the purpose of finding a place to rent. On May 24, as the result of an argument between them, defendant was arrested and jailed on a charge of battery. While the defendant was in jail, his wife stayed at the home of Jim Springer with Springer and Walter Aldridge. There was testimony from police officers that while in jail the defendant seemed moody and bothered by the fact that his wife was staying with two other men. Defendant said that he was going to get her, that he would kill her. Defendant admitted making these threats, but denied that he meant them seriously.

While in jail defendant had trusty status and was thus allowed freedom to move around both inside and outside the jail. The evidence was that on June 12, he walked away from the jail and found his wife. On June 14, they moved into an Ontario hotel. Most of their time Sunday and Monday was spent drinking in bars and in their hotel room. Some time after 1:00 a.m., on June 16, defendant and his wife got into a fight in their hotel room. She took a .22 caliber pistol out of her purse and threatened to shoot him. A brief struggle followed in which defendant was able to get the gun from his wife and throw it to the floor. It was at this time that the defendant inflicted the scratch marks later observed by the examining physicians. The pistol was actually incapable of being fired but the defendant did not know this. A few hours later the wife's temper flared up again and she again grabbed the pistol and pointed it at the defendant, threatening to shoot him. Defendant thought his wife was going to kill him and was quite afraid. He asked his wife to

give him a cigarette, and when she turned to get matches, defendant threw a blanket over her. He then grabbed her hand with one hand and threw his other arm around her neck. She kicked him, and then fell to the floor with defendant on top. Defendant told her to let go of the gun. She refused and defendant squeezed her neck. In a few moments she coughed and died. Defendant testified that the struggle on the floor lasted for approximately a minute and a half; that he attempted to revive her and when he could not he put her body into a closet and fled. Defendant admits killing his wife, but claims he did not intend to kill her. The examining physicians found the cause of death to be asphyxia due to manual strangulation.

■ Defendant first assigns as error the trial court's acceptance of a non-unanimous jury verdict. This assignment has been decided contrary to defendant's contention in *State v. Gann*, 254 Or 549, 463 P2d 570 (1969).

■ He next contends that the instruction on disputable presumptions was erroneous. His position is, that by instructing the jury that they were required to find the presumed facts unless they were equaled or outweighed by other evidence, the burden of proof was improperly shifted from the state to the defendant and his right to a trial by jury was abridged. This contention was not raised in the trial court. Therefore, it will not be considered on appeal. *State v. Westbrook*, 5 Or App 33, 482 P2d 547 (1971).

The third assignment of error is directed to the instruction on excusable homicide[1] given by the trial

---

[1] The instruction given by the circuit court relative to excusable homicide is set forth as follows:

"Now, ladies and gentlemen, let's discuss for a few moments

court. Defendant objected to its failure to distinguish between self-defense and excusable homicide. He contends that further definition and clarification were necessary when the instruction was read in conjunction with the instruction on self-defense, which it immediately followed. In addition to his specific objection to the instruction, defendant submitted an instruction (No. 18) which purported to define the defense of excusable homicide. In view of what follows we do not consider the correctness of defendant's requested instruction.

here excusable homicide. I do instruct you that the law does recognize that there are certain instances when the unintentional killing of a human being is not unlawful and it is excusable.

"Now, the laws of the State of Oregon set forth three circumstances wherein the killing of one human by another is excusable. And these are the three circumstances of excusable homicide: first, when the killing was by accident or misfortune in doing a lawful act by lawful means with usual and ordinary caution and without any unlawful intent; secondly, when the killing was by accident or misfortune in the heat of passion upon a sudden and sufficient provocation; and, thirdly, when the killing was by accident or misfortune upon a sudden combat without pre—premeditation or undue advantage being taken, and without any dangerous weapon or thing being used, and not done in a cruel or unusual manner.

"Now, ladies and gentlemen, excusable homicide, as you can see, is distinguished from felonious homicide, and to be excusable the killing of a human being must have been by accident or by misfortune.

"Now, even though the death was not anticipated, the homicide will not be excused if it was caused by an unlawful act or if it was caused by the doing of a—or, by the doing of a lawful act which might produce death without due caution and circumspection.

"Now, ladies and gentlemen, if you find in this case that the Defendant, Mr. Leos, killed Phyllis Apodaca Leos, and that such killing is excusable under the law of the State of Oregon as I have just given that law to you, then, of course, your verdict would be in favor of the Defendant."

■ ■ There are several distinctions between self-defense and excusable homicide. In self-defense the use of *deadly* force is purposeful. In excusable homicide the use of *deadly* force is accidental or mistaken. In order for defendant to be entitled to an acquittal based on self-defense he must have reasonably believed that he was in danger of death or great bodily harm. This is not necessary for the defense of excusable homicide. A further requirement of excusable homicide is found in ORS 163.110 (1) which provides that the killing must have been committed by the defendant in doing a lawful act, by lawful means, with usual and ordinary caution.

Because of these differences there are instances when self-defense is not an available defense, where excusable homicide still may be relied upon by the defendant. This would be the case when the defendant did not believe or have reason to believe that he was in danger of death or great bodily harm, but the killing was accidental and resulted from the commission of a lawful act, by lawful means, with usual and ordinary caution.

In this type of situation, although self-defense would not be a defense, the right to self-defense is still available to establish that the defendant was engaged in a lawful act at the time of the killing. This principle is recognized in 1 Wharton, Criminal Law 848, 851, § 623, n "Self-defense" (12th ed 1932):

"The mere fact that the defendant did not at the time of the killing, believe such killing was necessary does not divest him of the right to set up self-defense if the killing was not intended by him, but was incidental to his excusable defense of himself when assaulted."

The distinction between self-defense as a defense and

self-defense as a right is stated in 40 CJS 981, Homicide § 112 (c):

"Ordinarily the law of self-defense is not applicable in a case of a killing resulting from an act which was accidental and unintentional, particularly where the facts of the case are not such as would make such law applicable. However, where the defense of excusable homicide by misadventure is relied on, the principles of self-defense may be involved, not for the purpose of establishing defense of self, but for the purpose of determining whether accused was or was not at the time engaged in a lawful act; and it has been held that in such case the right, but not the law, of self-defense is invoked. Accused is entitled to an acquittal where he was lawfully acting in self-defense and the death of his assailant resulted from accident or misadventure * * *."

█ Defendant asserts that the instruction on excusable homicide was prejudicial error because it did not explain that the right of self-defense could be considered in determining whether or not defendant had been engaged in a lawful act when the killing took place and that this right was not dependent on a finding that the defendant reasonably believed that he was in danger of death or great bodily harm. We agree. The defendant testified that he was acting in defense of himself when he unintentionally killed his wife. This testimony was sufficient to justify an instruction on excusable homicide. ORS 163.110. Under ORS 163.110 (1) before a jury could convict defendant, it must first find that defendant's act in defending himself was an unlawful act, or that it was a lawful act done without usual and ordinary caution. Immediately preceding the challenged instruction, the trial court instructed the jury that to acquit based on

self-defense they must find that the defendant reasonably believed that he was in danger of death or great bodily harm. From this the jury may well have inferred that they were required to find that the defendant reasonably believed he was in danger of death or great bodily harm before they could find that he had been engaged in a lawful act at the time of the killing. The defendant was entitled to a clear and complete instruction on the law as it related to his theory of the case. Failure to so instruct warrants ordering a new trial.

Reversed and remanded.