Argued January 20, affirmed February 25, petition for rehearing denied March 21, petition for review denied April 18, 1972

STATE OF OREGON, *Respondent, v.*
ORES HAYDON PEYTON, II, *Appellant.*

493 P2d 1393

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant and one Johnny Lee Cannon were jointly indicted for the crime of armed robbery. ORS 163.280. They were tried separately. The defendant

was convicted. He appeals, urging four assignments of error.

At approximately 9:25 p.m. on July 3, 1970, while working in the back portion of his grocery store in Medford, Oregon, Raymond Gould was confronted by a man with a .45 caliber revolver. Mr. Gould was told to turn around and walk to the front of the store where he saw another man, Johnny Lee Cannon, with a gun, and Mrs. Pike, a store employe. At Cannon's direction, Mr. Gould and Mrs. Pike took the money from the cash register drawers and handed it to Cannon.

During the course of the robbery, Mrs. Davis, a customer, walked into the store to do some shopping, and, according to appellant's brief, she "walked by the check stand and the defendant [Peyton], who was crouched behind a counter to avoid detection." Mr. Gould then went over to Mrs. Davis and, after informing her that a holdup was in progress, asked her to go to the back of the room. The three, Mr. Gould, Mrs. Pike and Mrs. Davis, were then forced inside a walk-in beverage cooler located at the rear of the store. A padlock was placed on the door, but the robbers were unable to fasten the hasp on the lock.

Just before 10 p.m., Louis Knudsen, another customer, walked into the store and, seeing no one up front, proceeded to look for Mr. Gould. Mr. Knudsen soon saw another man who, holding a gun, motioned for him to move to the rear of the store. Mr. Knudsen was then forced into the cooler with the others. Within a few minutes the four were discovered by Mrs. Jeannie Ann Duncan, a former employe, who entered the store and noticed no one around and the cooler light on.

Defendant was subsequently arrested in Modoc County, California, for an armed robbery committed in that state.

About a week after the robbery of Mr. Gould's grocery store, Medford Police Detective Robert Stedman, who had been investigating the crime, visited Mr. Gould and showed him various photographs, some of which Detective Stedman had received from authorities in California. Two of the pictures were of Johnny Lee Cannon and the defendant. Mr. Gould identified the two men as the robbers saying, "You've got your boys right here." There is some conflict as to precisely when Mr. Gould made his identification and how many times he was shown pictures of the defendant. In any case, it is clear that the first time Mr. Gould was shown a picture of defendant he identified him as one of the robbers. Mr. Gould also testified that it was not necessary for him to see the photographs after the first time in order to make an identification.

Sometime after seeing the photographs and identifying Cannon and Peyton therefrom, Mr. Gould saw defendant at a lineup held in Modoc County, California. Mr. Gould immediately identified Cannon from the lineup. He also pointed the defendant out, but apparently did not definitely identify him. Pursuant to defendant's motion, all evidence pertaining to this identification in the Modoc County lineup was suppressed. Subsequently, Mr. Gould again saw the defendant briefly in the courthouse hallway during the trial of Johnny Lee Cannon. Mr. Gould was not asked to make an identification of the defendant at that trial.

At defendant's trial, Mr. Gould testified that he had "a very good opportunity" to observe the defendant during the robbery, that defendant was then

standing only about three feet away from him, and that he looked defendant "right in the face." Mr. Gould also testified that his identification of defendant as one of the holdup men was based upon "looking at him right in the eye when he had a gun on me," and that he did not need any later view of defendant to reinforce his identification.

██ Defendant's first assignment of error asserts that "the court erred in allowing an in-court identification of defendant [by Mr. Gould] that resulted from an illegal line-up and the state failed to show by clear and convincing evidence that the in-court identification was independent of the illegal line-up." We disagree.

Mr. Gould's in-court identification of defendant was proper since, by clear and convincing evidence, it was established that the identification was independent and untainted by the challenged line-up procedure. *State v. Moore,* 1 Or App 394, 397-98, 460 P2d 866 (1969), 463 P2d 373, Sup Ct *review denied* (1970); *State v. Mershon,* 1 Or App 305, 309, 459 P2d 551 (1969), Sup Ct *review denied* (1970); *United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967). Defendant's further assertion that the court was required by the *Wade* decision to specifically find that the state established that the in-court identification was independent and untainted is also without merit. *United States v. Wade,* supra.

█ Defendant's second assignment of error challenges a portion of the court's instructions to the jury. At trial defendant specifically stated he had no objections to the instructions. The contention will not now be considered on appeal. *State v. Leos,* 7 Or App 211, 490 P2d 521 (1971).

Defendant asserts in his third assignment of error that the court erred in denying his motion for a continuance until his co-indictee, Johnny Lee Cannon, could be subpoenaed to testify at defendant's trial.

Cannon, whose trial was before this defendant's, did not testify on his own behalf. Cannon was found guilty and his conviction was affirmed on appeal to this court subsequent to the trial of the case at bar. 8 Or App 247, 492 P2d 831 Sup Ct *review denied* (1972). He had been transported to California sometime before defendant first informed the court at the beginning of his trial that he wanted Cannon subpoenaed. Defendant's request for Cannon to appear was made without participation of his counsel and, in fact, against the advice of counsel. After defendant's request, the following took place:

"THE COURT: * * * Mr. Fliegel [defendant's attorney], it was your—do you care to disclose to me—this was your desire, you desired not to have Mr. Cannon subpoenaed, is that correct?

"MR. FLIEGEL: Nothing was ever disclosed to me as to what Mr. Cannon would say, Your Honor. In my evaluation of the case I could see no purpose of having Mr. Cannon here. And Mr. Peyton would not inform me why he wanted him here. He just stated 'You get him here.' That's as far as it went. He speaks of this blowup he had. That's correct. He lost his temper. Went stomping out of the room up there just yelling 'You get him here.' So I had no information to determine why he wanted him here. He never disclosed it to me.

"* * * * *

"At any rate, in regard to Mr. Cannon's testimony that's the status and I had nothing to base my judgment on. I wasn't willing to subpoena Mr. Cannon in here just because Mr. Peyton said he wanted him here."

Prior to this motion on the morning of the trial, the trial date had already been continued on three occasions—twice on defendant's requests and once pursuant to his motion to suppress. The court's denial of defendant's motion came after the district attorney agreed to stipulate that, if present to testify, the co-indictee Cannon would testify to everything defendant contended he would testify. The stipulation was read to the jury as follows:

"MR. FLIEGEL: At this time, Your Honor, the defendant would request that the stipulations be read to the jury.

"THE COURT: All right. Ladies and gentlemen of the jury, it has been stipulated between the District Attorney and the defendant that if John Cannon who is also listed in the indictment as a co-defendant were in court that he would testify that the 45 caliber revolver the silver 45 caliber revolver marked as Exhibit 8, that it was purchased in Los Angeles, California by John Cannon on or about the 10th day of July of 1971 from an unknown person. Mr. Cannon would further testify if in court that he was not with the defendant Peyton at the time of the crime alleged in the indictment. That he had left Peyton at about 2:00 p.m. in the afternoon of that same day."

■ We recognize that a defendant has a constitutional right of compulsory process for obtaining witnesses in his favor. Oregon Constitution, Art I, § 11; U.S. Const. amend. VI, XIV. While this is clearly a valuable right, it is not an absolute right. *State v. Gann,* 254 Or 549, 463 P2d 570 (1969); *State v. Smith,* 1 Or App 153, 155-58, 458 P2d 687 (1969), Sup Ct *review denied* (1970); *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967); *State ex rel Gladden v. Lonergan,* 201 Or 163, 269 P2d 491 (1954); *State v. Blount,* 200 Or 35, 264 P2d 419, 44 ALR2d

711 (1953) ; *see also* ORS 139.210-139.260, Oregon Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. Were the rule otherwise,

> "* * * a defendant, by claiming materiality of witnesses, might make so many demands for their attendance that expense and delay would seriously impede or prevent the administration of justice." *State v. Smith,* supra, 1 Or App at 158.

Furthermore, in the instant case, the defendant's attorney had earlier decided that, as a tactical matter, it would be best not to call Cannon as a witness. Thus no timely request for the issuance of compulsory process was addressed to the court.

■■ The granting or denial of a motion for continuance is within the sound discretion of the court and will only be upset on a showing of clear abuse thereof. *State v. Young,* 1 Or App 562, 569, 463 P2d 374, Sup Ct *review denied* (1970) ; *State v. Edwards,* 3 Or App 179, 471 P2d 843, Sup Ct *review denied* (1970). Here no such abuse was shown.

■ The final assignment of error—the unanimous jury verdict—has already been decided against defendant. *State v. Gann,* supra.

Affirmed.