Argued June 24, affirmed July 22, reconsideration denied
August 21, petition for review denied October 1, 1974

STATE OF OREGON, *Respondent, v.* HAMPTON
WILBER KING (No. 73-1422-C), *Appellant.*

524 P2d 564

*Robert C. Cannon,* Deputy Public Defender, Salem,

argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

This case involves the admissibility of in-court identifications made by two young boys. Defendant was convicted of first degree sexual abuse,[1] committed by touching the penis of a nine-year-old boy.[2] The in-court identifications of defendant were made by the nine-year-old victim and his 11-year-old brother.

Defendant appeals, arguing that the in-court identifications should have been suppressed because they did not derive from independent knowledge of defendant's appearance at the time of the crime. Defendant argues that these identifications were tainted by an allegedly suggestive show-up conducted at the police station a few hours after the incident, and prior

---

[1]
"(1) A person commits the crime of sexual abuse in the first degree when he subjects another person to sexual contact; and

"(a) The victim is less than 12 years of age * * *

"* * * * *." ORS 163.425 (1)(a).

[2] In State v. Pagel, 16 Or App 412, 518 P2d 1037, Sup Ct *review denied* (1974), we held ORS 163.425 to be constitutional, as limited to such acts as heterosexual or homosexual genital manipulation, or fondling of a woman's breast. The conduct in the present case falls within that prohibition.

to defendant's arrest. The court did, however, suppress evidence of the witnesses' identification of defendant at the show-up.

On the evening of August 9, 1973, defendant was alleged to have approached the victim and his brother. Defendant offered them $5 to help push his (defendant's) stalled car. The boys agreed and followed defendant behind a local school building toward where a car was parked. Once behind the school, defendant sent the older boy on an errand. The victim testified that after his brother left, defendant pulled down his (the boy's) pants and touched his penis. Both boys left the school grounds when the older brother returned.

The boys immediately went home and told their mother what had happened. She in turn called the police. The investigating officer testified that he received a radio call concerning the incident, which described the suspect as an older man with a large frame, having a cast on one arm and wearing a green checked shirt. The officer testified that he questioned two juveniles who lived across from the school grounds. Both told the officer they had seen a man matching the above description and that this man ran from the school grounds near the alleged time of the incident. The juveniles identified the man as defendant, whom they knew from the neighborhood, and showed the officer where defendant lived. Both said that defendant had a cast on one arm.

The police officer later found defendant at home and requested defendant to accompany him to the police station for questioning. At the police station, defendant was placed in a room by himself where he was observed by the victim and his brother through a

one-way mirror. Both boys individually identified defendant.

At the beginning of the trial, the judge ruled that the police station show-up was unnecessarily suggestive, holding that evidence that the boys identified defendant at that show-up was inadmissible. However, the judge ruled that the two boys would be permitted to make an in-court identification of defendant if they could do so based on independent knowledge apart from the show-up.

■■ A witness may make an in-court identification if that identification is based on an independent origin, free of taint from any improper pre-trial line-up or show-up procedures. *United States v. Wade,* 388 US 218, 242, 87 S Ct 1926, 18 L Ed 2d 1149 (1967); *State v. Moore,* 1 Or App 394, 398, 460 P2d 866, 463 P2d 373, Sup Ct *review denied* (1970); *State v. Mershon,* 1 Or App 305, 309, 459 P2d 551 (1969), Sup Ct *review denied* (1970). In such a situation, the burden is upon the prosecution to establish the independence of the in-court identification by clear and convincing evidence. *United States v. Wade,* supra at 241; *State v. Mershon,* supra at 309.

In *State v. Mershon,* 1 Or App 314, 460 P2d 363 (1969), Sup Ct *review denied* (1970), the trial court held a separate hearing to determine whether evidence of a line-up identification was admissible. There the trial court found that the line-up was illegally conducted; therefore testimony concerning that identification was not admissible. However, the trial court specifically found that the witnesses were able to make in-court identifications based on independent observations of the defendant apart from the line-up. We approved of this procedure. 1 Or App at 319.

In *State v. Moore,* supra, and *State v. Peyton,* 8 Or App 479, 493 P2d 1393, Sup Ct *review denied* (1972), neither trial court conducted a separate hearing to determine whether in-court identifications were based on independent origins. Nevertheless, in both cases, this court upheld in-court identifications as independently made and untainted by improper pre-trial identification procedures. *State v. Moore,* supra, 1 Or App at 397-98; *State v. Peyton,* supra, 8 Or App at 483; *see also, State v. Seay,* 8 Or App 509, 513, 495 P2d 39 (1972). Further, in *Peyton* we held that the trial court need not make a specific finding as to this question. 8 Or App at 483.

■ In the present case the trial court did not conduct a separate hearing concerning the independence and admissibility of the in-court identification. The court did, however, hold a pre-trial hearing concerning the show-up identifications, evidence of which was held inadmissible. The trial court then instructed the prosecutor that the state had the burden to establish, by clear and convincing evidence, that in-court identifications were based on independent origin, apart from the show-up. Following the state's case, defense counsel moved to suppress the in-court identifications of defendant and also for a judgment of acquittal. Both motions were denied. We conclude that the necessary implication from the trial court's ruling is that the court was satisfied with the independence of the in-court identification.

The confusion concerning the in-court identification of defendant arises over the question of defendant's beard. It is apparent from the testimony that both of the young boys, the victim and his brother, were unsure of what a 'beard' was, or whether defend-

ant had a 'beard' at the time of the crime. However, both boys testified that defendant had some hair on his face. Two other witnesses, the juveniles who observed defendant running from the school grounds, testified that defendant had a beard when they first saw him but that later that evening defendant appeared freshly shaven. Thus there is evidence that defendant had a beard at the time of the crime. At the time of the show-up defendant was clean-shaven.

We resolve this issue based on the "totality of the circumstances." *Stovall v. Denno,* 388 US 293, 302, 87 S Ct 1967, 18 L Ed 2d 1199 (1967); *Neil v. Biggers,* 409 US 188, 196, 93 S Ct 375, 34 L Ed 2d 401 (1972). Weighing the factors set forth in *United States v. Wade,* 388 US at 251, and *Neil v. Biggers,* 409 US at 199, we conclude that the in-court identifications of defendant were proper and that the evidence established that the in-court identification by each witness had an independent origin apart from, and untainted by, the show-up.

Affirmed.