Argued September 16, 1969, affirmed January 8, petition
for rehearing denied February 17, 1970. Petition for
review denied by Supreme Court May 27, 1970

STATE OF OREGON, *Respondent, v.*
LAWRENCE CHARLES YOUNG,
*Appellant.*
463 P2d 374

*George A. Haslett, Jr.,* Portland, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

FOLEY, J.

Defendant was convicted by a jury of procuring a female to engage in prostitution and given a five-year sentence. He immediately appealed. In an enhanced penalty proceeding six weeks later this sentence was vacated and a 15-year sentence imposed. He also appeals from this judgment.

Defendant was indicted on November 24, 1967, for procuring Kathy P. At the trial there was testimony that in October 1967, defendant offered to establish two girls in an apartment if they would work for him, and that one of them, Kathy P., was so installed. Thereafter, during the presentation of the state's case, but out of the presence of the jury, the defendant at one point withdrew his plea of not guilty and entered a plea of guilty. The court ultimately rejected the

guilty plea when, in answer to a question by the court, defendant denied that he had procured Kathy P.

Kathy P. was called as a witness for the state and denied being a prostitute and specifically denied that defendant had procured her. The prosecution then offered in evidence a portion of a tape recording of a November 12, 1967, telephone conversation between Kathy P. and an acquaintance of hers, Sharon B., in which Kathy P. admitted she had been "turning dates" and giving defendant her money. The telephone conversation was recorded by a police officer with the permission of Sharon B. The defendant was with Kathy P. at this time and part of the recording included conversation between him and Sharon B. in which he made incriminating statements. The defendant's first assignment of error is that the admission of the recording of his conversation violated his right against unreasonable searches and seizures and that Oregon's permissive wire-tapping statute is unconstitutional.

■ Defendant admits that Oregon's permissive wire-tapping statute, ORS 165.540, authorizes recording of a telephone conversation where one of the participants consents, but claims that the statute is unconstitutionally vague and uncertain in that it provides different rules for telephone conversations and face-to-face conversations. This argument is without merit. The statute is quite specific. It bars the mechanical overhearing of *telephone* conversations unless "consent is given by at least one participant" and bars the mechanical overhearing of *face-to-face* conversations where "all participants in the conversation are not specifically informed that their conversation is being obtained."

■ Defendant urges that the recording was a viola-

tion of his right to be protected from unreasonable search and seizure in that conversations are within the Fourth Amendment protection and quotes *Katz v. United States*, 389 US 347, 353, 88 S Ct 507, 19 L Ed 2d 576 (1967):

> "* * * The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment * * *."

In *Katz* neither party entitled to disclose the content of the conversation was aware that the conversation was being overheard. Such was not the case here. When the defendant spoke to Sharon B. over the telephone he knew that she could tell others of the conversation and took that risk. He also knew that she could publish it by telling authorities or testifying in court. He further knew and risked that Sharon B. could permit another to hear the conversation and that the other could corroborate her in court. The recording of this conversation by mechanical means insures the accuracy of otherwise admissible testimony as to the conversation. No constitutional or statutory error was committed in receiving the evidence. *Hoffa v. United States*, 385 US 293, 87 S Ct 408, 17 L Ed 2d 374 (1966), reh den 386 US 940, 951, 87 S Ct 970, 17 L Ed 2d 880 (1967); *Osborn v. United States*, 385 US 323, 87 S Ct 429, 17 L Ed 2d 394 (1966), reh den 386 US 938, 87 S Ct 951; 17 L Ed 2d 813 (1967); *Lopez v. United States*, 373 US 427, 439, 83 S Ct 1381, 10 L Ed 2d 462, reh den 375 US 870, 84 S Ct 26, 11 L Ed 2d 99 (1963).

■ Defendant's second assignment of error is that the tape recording of the conversation between Kathy

P. and Sharon B. should not have been admitted as evidence impeaching Kathy P.

Impeachment by prior inconsistent statements is controlled by two statutes. ORS 45.590 provides:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.610 * * *."

ORS 45.610 provides:

"A witness may be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he shall be asked whether he made the statements, and if so, allowed to explain them * * *."

On direct examination Kathy P. denied working for the defendant as a prostitute. She was then asked if she recalled the telephone conversation of November 12, 1967, and she stated: "I don't recall." The recording was played out of the presence of the jury and she admitted making the statements. Thereafter the tape recording was played in the presence of the jury and at its conclusion Kathy P. again admitted making the statements on the tape but said it was still her testimony that she had not worked for the defendant as a prostitute and that she had never been a prostitute. In cross-examination she explained that she was "just kidding" during the telephone conversation. The court limited the jury's consideration of this portion of the tape to impeachment. There was no error.

■ In his third assignment of error, defendant contends that it was error for the court to admit testimony of Linda V. indicating that, after the return of the November 24, 1967, indictment, Kathy P. worked as a prostitute and turned over to the defendant the proceeds thereof.

Defendant cites ORS 132.610 relating to the allegation in the indictment of the time an offense is alleged to have occurred:

> "The precise time at which the crime was committed need not be stated in the indictment, *but it may be alleged to have been committed at any time before the finding thereof* and within the time in which an action may be commenced therefor, except where the time is a material ingredient in the crime." (Emphasis supplied by defendant.)

This statute refers to the charging of the crime in the indictment, not to proof of the crime.

■ The defendant is charged with procuring Kathy P. to engage in prostitution. The testimony that she did in fact engage in prostitution after having been procured is relevant to show the relationship as prostitute and procurer. Where a specific relationship between the parties defines the crime, it is relevant to show acts of those parties which tend to prove such a relationship even though such acts occur after the date of the crime or continue after the date of the indictment. *Lutwak v. United States,* 344 US 604, 617-18, 73 S Ct 481, 97 L Ed 593 (1953); *State v. Cole,* 252 Or 146, 448 P2d 523 (1968).

■ Defendant's assignment also goes to Linda V.'s testimony that over the weekend following jury selection and prior to testimony the defendant threatened her life if she did not claim her Fifth Amendment

privilege. Defendant claims this should have been excluded as evidence of another crime. Evidence that a party attempts to suppress evidence by the intimidation of witnesses, though a crime, is relevant to his guilty state of mind and is therefore admissible as proof of guilt. *State v. Paquin,* 229 Or 555, 562-64, 368 P2d 85 (1962).

As error No. 4 defendant assigns the court's refusal to grant a continuance. The defendant's motion for continuance came following testimony of Linda V. that her life had been threatened by the defendant, but the defendant made no showing by way of affidavit or otherwise which demonstrated problems not normally to be expected in a criminal case. Neither does he now contend that he would have employed any different trial procedure if a continuance had been allowed nor does he specify wherein any prejudice to defendant resulted.

A motion for a continuance is addressed to the sound discretion of the trial court. To be seriously considered by the trial court it should be supported by some specific showing of good cause. See *State v. Brauhn,* 247 Or 430, 430 P2d 1012 (1967). A ruling thereon will not be disturbed unless there is a demonstration of an abuse of discretion and prejudice to the accused. *State v. Wolfer,* 241 Or 15, 403 P2d 715 (1965); *State v. Otten,* 234 Or 219, 222-23, 380 P2d 812 (1963); *State v. Cole,* 233 Or 141, 149-50, 377 P2d 168 (1962). No abuse of discretion or prejudice to the defendant has been shown in this case.

Defendant's fifth assignment of error challenges the jurisdiction of the circuit court to change the sentence in an enhanced penalty proceeding once a notice of appeal in the principal proceeding has been

served and filed. This court has recently held that during that period of appeal not only does the circuit court have jurisdiction to entertain enhanced penalty proceedings but it is the duty of the district attorney to proceed therewith promptly. *State v. Romero*, 1 Or App 217, 461 P2d 70 (1969).

The prosecution of this habitual criminal proceeding in no way affects the right of the defendant to effectively prosecute his appeal.

There being no error in the proceedings in this case, the judgment is affirmed.