Argued June 18, affirmed July 14, reconsideration denied
August 20, petition for review denied September 23, 1975

## STATE OF OREGON, *Respondent*, v. HEWEY LEE THOMPSON (No. C 74-04-1220 Cr), *Appellant*.

538 P2d 78

*Robert C. Cannon*, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*W. Michael Gillette*, Solicitor General, Salem, ar-

gued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Defendant was convicted by a jury of the crime of tampering with drug records, ORS 167.212. He appeals from the resulting judgment.

His sole assignment of error relates to the denial by the trial court of his motion for a mistrial based upon certain testimony elicited from a police officer during the state's case-in-chief.

The charge was that the defendant unlawfully and knowingly uttered a forged prescription for a drug, Ritalin, which it is acknowledged could only be used pursuant to a physician's prescription. It is not disputed that the prescription delivered to the pharmacy was a forgery. The question in the case was whether the defendant was the person who presented it to the pharmacist. The defendant was positively identified by the pharmacist as the person who had presented the forged prescription and to whom he delivered the Ritalin. He had also testified that the defendant the following Sunday had again presented another forged prescription substantially identical to the one charged. On cross-examination he also testified that "mug" shots had been exhibited to him and that he had identified the defendant from among them.

The testimony leading to the motion for a mistrial was elicited thereafter from the last witness called by the state as follows:

"Q   Officer Johnson, did you have an occasion to investigate a case involving a Hewey Lee Thompson?

"A   Yes, sir, I did.

"Q And how did that case first come to your attention?

"A I received a call from a pharmacist at the Fred Meyer Pharmacy.

"Q When was that?

"A This call was received on April the 5th of this year.

"Q Okay. And in response to that call, what did you do?

"A In talking with the pharmacist on the phone, he stated that a forged prescription for the drug Ritalin had been passed in his pharmacy. He stated that the person that passed the prescription had showed him a check tag with the name of Larry Wilson on the tag as identification and the pharmacist had requested this from the party passing the prescription. After the pharmacist told me this on the phone, I was aware of the activities of Mr. Wilson in this area, so I pulled a picture of Mr. Wilson, along with a picture of four or five other people of similar desciption who I knew were active in passing forged prescriptions, and this particular group of pictures I took to the pharmacist that day."

No motion for a mistrial was made at this time, nor was an objection made to it. The direct examination continued for another four pages of transcript. During this time several photographs were identified as exhibits by the witness and admitted into evidence without objection.

After the direct examination had been concluded, the defendant made his motion for mistrial.

At the conclusion of the discussion over the motion, the court ruled:

"THE COURT: Any time the Police Department uses photographs, I suppose a juror with any degree of sophistication could surmise that

the reason the Police Department has the photograph is that he's been arrested. I'm not sure that it's that significant. Had there been an objection, it would have been sustained. I appreciate counsel's concern, and that part of the testimony is clearly improper.

"I'm going to deny the motion for a mistrial. I'll permit you to renew your motion after all of the evidence is offered, and if it appears that taken in light of the entire testimony, I will take another look at it then. But I think the motion comes too late."

We note that the defendant did not, as the court had suggested, renew his motion "after all of the evidence is offered."

■ This case is governed by two well-established rules in Oregon. The first was most recently enunciated by our Supreme Court in *Plourd v. Southern Pac. Transp. Co.*, 272 Or 35, 534 P2d 965 (1975), as follows:

"* * * It is well-established, however, that because the trial court is in the best position to evaluate the effect upon the jury of claimed misconduct by lawyers in arguments to juries, we consider the granting or denial of such a motion for mistrial to be a matter which should be left largely to the discretion of the trial judge, subject to reversal only for an abuse of that discretion. See *Martin v. Dretsch,* 234 Or 138, 140, 380 P2d 788 (1963), and cases cited therein. * * *" 272 Or at 44-45.

■ The second rule relates to the time of making a motion for mistrial. In *State v. Evans,* 19 Or App 345, 527 P2d 731 (1974), Sup Ct *review denied* (1975), we said:

"Defendant next assigns as error the denial of his motion for mistrial, made at the conclusion of evidence, based upon the admission of identifica-

tion testimony by the victim on ground that the investigative procedures were unduly suggestive under *Simmons v. United States*, 390 US 377, 88 S Ct 967, 19 L Ed 2d 1247 (1968). While we find no such problem, we need not reach the issue. An objection to the admission of evidence must be timely made so that error, if any, can be avoided in the first instance. A motion for mistrial made after the close of the evidence does not substitute for timely objection so as to preserve error for appellate review." 19 Or App at 354.

As in *Evans*, we do not reach the issue of error in the officer's testimony. We conclude, first, that there was no abuse of the court's discretion in its denial of the motion for mistrial, and, second, that the motion was not timely made.

Affirmed.