Argued and submitted November 24, 1982, affirmed March 23, reconsideration denied May 13, petition for review denied June 7, 1983 (295 Or 161)

STATE OF OREGON,
*Respondent,*
*v.*
JOHN PAUL SCHROEDER,
*Appellant.*

(124003; CA A22555)

661 P2d 111

Paul J. DeMuniz, Salem, argued the cause for appellant. With him on the briefs was Garrett, Seideman, Hemann, Robertson & DeMuniz, P.C., Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals convictions for robbery in the first degree, two counts of sodomy in the first degree and two counts of rape in the first degree. He assigns as error the trial court's (1) denial of this motion to suppress evidence seized during a search of his residence; (2) denial of his motions for removal of leg shackles during trial and for mistrial based on the same ground; (3) denial of his motion for continuance made during trial; (4) exclusion of expert testimony on the reliability of eyewitness identification; (5) denial of his motion for mistrial based on the prosecutor's failure to disclose certain information; and (6) failure to require disclosure of all grand jury testimony. We affirm.

In his first assignment defendant contends that the court erred in denying his motion to suppress evidence seized from his residence pursuant to a search warrant. On February 16, 1980, during a search of defendant's van for evidence of an unrelated crime,[1] detectives of the Eugene Police Department discovered evidence that they believed connected defendant to numerous sex crimes that had been committed in the University of Oregon area over a two-year period. A search warrant was obtained to search defendant's van, his residence and his person for evidence of crimes of rape, sodomy, sexual abuse, burglary, assault and robbery. Defendant contends that the affidavit supporting the search warrant establishes only that the crimes were committed by a "masked rapist" but does not establish probable cause to believe that they were committed by defendant or that evidence of those crimes would be found at his residence.[2]

---

[1] Police were searching defendant's van for evidence of an attempted burglary that had occurred earlier that morning. The van was apparently searched three different times, once pursuant to a warrant, twice without a warrant. Defendant does not contest the validity of these searches.

[2] At first, defendant appeared to argue that the affidavit was improperly based on hearsay but later stated:

"The specificity of facts related by the various victims of the incidents catalogued by the affiant in the subject affidavit in the instant case, and the fact that the informants were all victims who personally experienced the criminal acts of the perpetrator, probably provides facts to establish a sufficient basis of knowledge of the informants."

The extensive search warrant affidavit, parts of which we summarize, began with a recitation that affiant

"* * * [is] a Detective with the Eugene Police Department and has been so employed for the past eight years. I am currently assigned to the investigation of sex crimes. I have investigated hundreds of incidents of sexual assault. In my employment, I have investigated a number of cases involving a perpetrator of burglaries and sexual assaults in the Eugene-Springfield area who wears a ski mask or hood-type ornament. These cases began over two years ago and involve a similar method of operation. The following case summaries are based upon my direct interviews with participants and/or witnesses, my conversations with other investigating law enforcement personnel and my review of police reports specifically identifying witnesses and victims."

The affidavit then described 25 criminal incidents occurring during a period approximately two years immediately before defendant's arrest. The incidents involved similar offenses of burglary, rape, sodomy, assault and robbery. The method used by the perpetrator in each instance was similar, as was the victim's physical description of the assailant. The affidavit recited defendant's physical characteristics, which closely matched those described in some of the reports of the other crimes.

One incident related in the affidavit involved an attempted burglary of Rick Tanner's residence. Tanner surprised the burglar and was able to describe him, his clothing and the vehicle he fled in. A vehicle fitting that description was located and determined to be registered to defendant. Defendant was arrested a short time later. A search of the vehicle pursuant to a separate search warrant and a search of defendant incident to his arrest, disclosed several items of clothing, including a homemade mask that were consistent with clothing and a mask described by several victims of the criminal episodes described in the affidavit.

The affidavit included a composite drawing of the perpetrator of the described criminal offenses and a photograph of defendant. A comparison of the photograph and the drawing shows many similarities. The affiant stated that defendant told the police that he had type A positive

blood and that an analysis of seminal fluid obtained in the investigation on one of the rapes concluded that the perpetrator of that rape had type A positive blood.

Although the search warrant issued on the basis of the affidavit gave authority to search defendant's person, his car and residence, defendant objected only to certain items of evidence seized from his residence.

In analyzing the probable cause basis of a search warrant, we are guided by the principle according a preference to searches under a warrant. "[I]n a doubtful or marginal case a search under a warrant" will be sustained "where without one it would fall." *United States v. Ventresca,* 380 US 102, 106, 85 S Ct 741, 13 L Ed 2d 684 (1965). Additionally, in evaluating the sufficiency of the affidavit, probable cause "does not mean more likely than not, it means only a well-warranted suspicion." *State v. Willis,* 24 Or App 409, 412, 545 P2d 1392, *rev den* (1976). Thus, affidavits are to be read in a commonsense, nontechnical manner, looking at both the facts recited and the reasonable inferences that can be drawn from those facts. *State v. Mellinger,* 52 Or App 21, 25, 627 P2d 897 (1981); *State v. Harp,* 48 Or App 185, 190, 616 P2d 564, *rev den* 290 Or 171 (1980); *State v. Age,* 38 Or App 501, 503, 590 P2d 759 (1979).

The affidavit at issue here establishes that defendant's physical description matched that given by witnesses in the case summaries; that three shirts matching the witnesses' description of clothing worn by the rapist were found in defendant's van; that defendant's photograph matched a composite drawing based on witnesses' descriptions; that a homemade mask similar to one described by some victims was found in the pocket of a sweatshirt discovered in defendant's van; that defendant's blood type matched that of the assailant in an earlier offense; that a feeler gauge found in defendant's possession at the time of his arrest was consistent with the description of the weapon carried by a man who attempted to assault a woman earlier that morning; and that defendant was identified by Tanner as the man who had attempted to burglarize his apartment earlier that same morning.

■    Although these facts do not plainly identify defendant as the "masked rapist," exactness is not required in a search warrant. The affidavit sets forth in a detailed fashion the underlying circumstances which support a well-warranted suspicion that defendant was connected to certain criminal activity. Similarly, although neither the affiant nor an informant directly observed fruits or evidence of the crimes in defendant's residence, the affidavit nonetheless sets forth sufficient facts and circumstances that tend to show that certain identifiable objects (clothing, weapons and stolen items) were likely to be found at defendant's residence. It is reasonable to infer that defendant's clothing (a plaid shirt) and weapons (a pocket knife) would be in his home where such objects are generally kept. *See United States v. Steeves*, 525 F2d 33, 38 (8th Cir 1975); *State v. Jones*, 299 NC 298, 261 SE2d 860, 865 (1980).

■ ■    Alternatively, defendant argues that assuming probable cause to believe the items sought had been at defendant's residence, there was no probable cause to believe that they were then on the premises. "Staleness" is judged in part by reference to the particular type of crime. If the alleged criminal activity is not a single incident but rather conduct repeated by the offender on several occasions, timeliness is less important. *See United States v. Dorfman*, 542 F Supp 345, 362 (N D Ill) *aff'd* 690 F2d 1217 (7th Cir 1982). Here the affidavit details numerous similar incidents of burglary, rape, assault and robbery occurring continuously over a two-year period. Thus, notwithstanding that certain objects of the search were sought as evidence of crimes occurring over a year ago,[3] the protracted course of defendant's alleged criminal conduct, the temporal proximity of the latest offense (the day before the search warrant issued) and the character of the items sought all supported the reasonable inference that objects of the search were on the premises at the time the warrant issued. *See State v. Diaz*, 29 Or App 523, 532, 564 P2d 1066 (1977).

Defendant next assigns error to the trial court's denial of his motion to remove the leg shackles during trial

---

[3] Defendant specifically objects to the seizure from his residence of a blender later identified by victims of a crime occurring in May, 1979, as stolen from their apartment.

and his subsequent motion for mistrial on that basis. The court denied defendant's motions on the basis of statements by a deputy sheriff, who stated that he considered defendant to be a security problem based

"* * * [o]n past history from Lane County, information from Lane County authorities to me and his past court performance in this officer's presence in another courtroom."

■ ■ A criminal defendant has the right to appear free of physical restraint in a trial before a jury. *State v. Smith,* 11 Or 205, 8 P 343 (1883); *State v. Kessler,* 57 Or App 469, 472, 645 P2d 1070 (1982). It is within the trial court's discretion, however, to order a defendant shackled "if there is evidence of an immediate or serious risk of dangerous or disruptive behavior." *State v. Moore,* 45 Or App 837, 840, 609 P2d 866 (1980).

■ As we emphasized in *Kessler,* the court must first have relevant information in order to exercise judicial discretion and must make a record of that information in order to permit review of the court's discretion. Although the information received need not come in a formal adversary proceeding, a conclusory statement alone by a prosecutor or law enforcement officer is not sufficient to permit the independent analysis necessary for the exercise of discretion. *State v. Kessler, supra; State v. Bird,* 59 Or App 74, 650 P2d 949, *rev den* 294 Or 78 (1982); *compare State v. Peaslee,* 59 Or App 519, 651 P2d 182, *rev den* 294 Or 212 (1982). A court must have information enabling it to make an independent judgment whether there is "immediate and serious risk of dangerous or disruptive behavior." *State v. Moore, supra,* 45 Or App at 840.

■ The record here fails to set forth any particularized basis[4] supporting the necessity for the security measure chosen by the trial court. No inquiry was made into the nature of defendant's past history, the information received from other county authorities or the deputy's personal observations of defendant in another courtroom. Thus,

---

[4] For example, in *Moore* there was evidence that defendant had assaulted figures of authority and fellow prisoners while in jail awaiting trial and en route to the courtroom and that at one point "defense counsel had been 'tossed * * * out of the jail' by defendant." *State v. Moore, supra,* 45 Or App at 840, n 2.

notwithstanding our reluctance to second-guess a trial court as to appropriate security measures during a trial, the record fails to show a substantial necessity for requiring defendant to wear leg shackles during trial. Absent such a showing, the trial court's denial of defendant's motion to remove his shackles was an abuse of discretion.

██ ██Requiring a defendant to wear leg shackles without a showing of substantial necessity violates his federal Due Process right to a fair trial.[5] *State v. Kessler, supra; State v. Moore, supra.* We must next determine, however, whether that error requires reversal of defendant's convictions. Before a constitutional error can be declared harmless, the court must be convinced that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967); *State v. Stilling,* 285 Or 293, 590 P2d 1223, *cert den* 444 US 880 (1979).

██    Here, notwithstanding the victims' inability to identify defendant as their assailant,[6] there was overwhelming evidence of his guilt. His distinctive teeth matched impressions in a piece of cheese partially eaten by the victims' assailant during the crime; his blood type was consistent with that of seminal deposits taken from rape victims; his height, weight and build matched those of the assailant; articles of clothing (mask, gloves, belt, jacket and boots) and a knife seized in post-arrest searches of defendant's person, van and residence matched those of the assailant.

Additionally, three victims of a similar criminal episode, which occurred less than a month later and a few blocks away from the instant crime, identified defendant as their assailant. A victim in a third similar crime identified a blender found in defendant's residence as the one taken from her by her assailant and testified that defendant was similar in height, weight and build to her assailant and that a photograph of defendant's genitals depicted two bumps

[5] Although the state argues that defendant was not prejudiced by being required to wear shackles during trial because the court specifically found they were not visible, we stated in *State v. Kessler, supra,* 57 Or App at 474, that "[i]t is difficult to accept the proposition that defendant could sit through a jury trial and constantly maintain a posture such that the jury would not see the leg irons" and further that "[i]f any of the jurors could see the leg irons, the prejudicial inferences logically follow."

[6] The victims' assailant wore a homemade mask that covered his head.

approximately the same size as those appearing on her assailant. Accordingly, given the overwhelming evidence of defendant's guilt, we conclude that the trial court's error in denying defendant's motion to remove his shackles during trial was harmless beyond a reasonable doubt. *Chapman v. California, supra.*

Defendant next contends that the trial court abused its discretion in denying his motion for continuance during the course of the trial. He had made a pretrial motion for a continuance, which was denied. On the first day of trial, he renewed his motion based on (1) defense counsel's inability to meet with defendant during the preceding weekend due to defendant's attendance at his father's out-of-state funeral; (2) defendant's previous unresponsiveness to counsel when in the psychiatric unit of the state hospital; (3) the 3500 pages of documents pertaining to the case; (4) inability to obtain unspecified police reports which defendant indicated were available; and (5) inability to locate a witness to testify as to his whereabouts on the date of the offense. In mid-trial, defendant again moved for continuance because he had not received requested police reports of all rape, sexual assault and sodomy offenses occurring after defendant's arrest in which the assailant was masked and, further, that a witness who would testify to the condition of defendant's teeth prior to his arrest[7] had not been located.

■ A motion for continuance is within the discretion of the trial judge. The court's ruling will not be overturned unless there is shown to be an abuse of discretion and prejudice to defendant. *State v. Wolfer,* 241 Or 15, 403 P2d 715 (1965); *State v. Young,* 1 Or App 562, 463 P2d 374, *rev den* (1970). As we stated in *State v. Reese,* 25 Or App 231, 234, 548 P2d 998 (1976):

> " ' "* * * There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons

---

[7] Evidence was introduced that teeth impressions on a piece of cheese found at the victims' residence closely matched a mold taken of defendant's teeth. Defendant contended that a crack in his tooth, similar to that found in the teeth impressions in the cheese, resulted from a physical encounter with police on the day of his arrest.

presented to the trial judge at the time the request is denied. * * *"' (Quoting from *Ungar v. Sarafite,* 376 US 575, 589, 84 S Ct 841, 11 L Ed 2d 921 (1964))."

On examining the record, we note that defense counsel stated in his motion for continuance that he was "[f]actually * * * in control of the * * * case," and the court noted that defense counsel had been appointed three months earlier and had agreed in April to the May trial date. Defendant made no showing that the time available for his appointed counsel was insufficient to prepare for trial. *State v. Reese, supra.* Additionally, the court noted that the relevance of the police reports sought by defendant was "highly speculative" and that there was no showing that the witness sought could be produced and if produced would testify as to facts material to defendant's defense.[8] Accordingly, because defendant failed to make a "specific showing of good cause," *State v. Young, supra,* 1 Or App at 569, in requesting a continuance, we find no abuse of discretion in denying it.

In his fourth assignment of error, defendant contends that the trial court erred in excluding expert testimony on the reliability of eyewitness identification. That contention is without merit. It is the province of the jury to weigh the evidence and to evaluate credibility. *State v. Goldsby,* 59 Or App 66, 70, 650 P2d 952 (1982). As we stated in *State v. Calia,* 15 Or App 110, 114, 514 P2d 1354 (1973), *rev den, cert den* 417 US 917 (1974):

> "* * * [Although] eyewitness identification evidence has a built-in potential for error * * *, [t]he law does not deal with that potential for error by allowing expert witnesses to debate the quality of the evidence for the jury."

Next defendant asserts that the trial court erred in denying his motion for mistrial based on testimony elicited from a defense witness during cross-examination. Defendant called a witness to testify concerning an offense occurring in May, 1979, which was remarkably similar to that for which defendant was on trial. On cross-examination, the witness identified defendant as the man he had

---

[8] As the state argues, the presence or absence of a crack in one of defendant's teeth was not as critical a means of identification as the presence of "bilateral winging" in defendant's lower teeth, which is a relatively uncommon occurrence.

seen looking through his back door window two or three weeks prior to the May burglary-assault. On redirect examination, the witness testified that he had informed the prosecutor about his observation and identification of defendant approximately one month before trial.

At the conclusion of the witness' testimony and out of the hearing of the jury, defense counsel stated that he had not known of the witness' prior observation and identification of defendant and requested that the jury be instructed to disregard that identification testimony based on the state's failure to disclose. That request was renewed the next day of trial. At the close of all the evidence, a curative instruction was again requested and defendant also moved for a mistrial. The court agreed that the "spirit" of the discovery statutes had been violated by the prosecutor's failure to inform defense counsel of the witness' identification of defendant. The court instructed the jury to "completely disregard" that portion of the witness' testimony concerning his observation of defendant at his back door.

▮▮ ▮▮The granting or denial of a motion for mistrial is within the discretion of the trial judge and must be timely raised. *State v. Thompson,* 22 Or App 146, 149, 538 P2d 78, *rev den* (1975). Assuming *arguendo,* that defendant's motion was timely, *see State v. Thompson, supra,* and that the prosecutor had a duty to disclose his knowledge of the witness' identification of defendant,[9] *see State v. McKendall,* 36 Or App 187, 196-97, 584 P2d 316 (1978), we do not

---

[9] ORS 135.815 provides, in relevant part:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:

"(1) The names and addresses of persons whom he intends to call as witnesses at any state of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons.

"* * * * *"

The prosecutor did not record the witness' statement, and there was no showing that the statement was purposely not recorded to avoid defense discovery. *See State v. McKendall, supra.* Moreover, defendant concedes that the withheld statement was not in the nature of an exculpatory statement requiring disclosure under *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). *See State v. Koennecke,* 29 Or App 637, 642-43, 565 P2d 376, *rev den* 280 Or 171 (1977).

find the witness' testimony so prejudicial as to deny defendant a fair trial. The witness identified a blender seized from defendant's residence as the one taken from the apartment by the assailant. The witness' wife also testified that two bumps on defendant's genitals depicted in a photograph at trial closely matched those on her assailant.

Additionally, as stated in *State v. Jones,* 279 Or 55, 62, 566 P2d 867 (1977):

> "Ordinarily we do not reverse a case for the denial of a motion for mistrial in which the trial court has sustained an objection to evidence and has admonished the jury to disregard it. * * *"

The court's instruction to the jury should have cured any prejudice to defendant stemming from the prosecutor's failure to disclose the witness' prior observation of defendant. Accordingly, we find no abuse of discretion in the denial of defendant's motion for mistrial.

Finally, defendant contends that the trial court erred in failing to require disclosure of all recordings of grand jury testimony. During presentation of his case, defendant moved for

> "* * * all Grand Jury benefits and minutes, and I submit that they be available for future use."

In *State v. Hartfield,* 290 Or 583, 592, 624 P2d 588 (1981), the court held that following direct examination of a witness by the state, a defendant is entitled to examine an existing recording of that witness' testimony given in the grand jury proceeding which led to the return of the indictment against defendant. The court emphasized, however, that it would not

> "* * * condone wholesale orders for disclosure of grand jury recordings. Where a witness before the grand jury has testified at trial for the state, a particularized need for disclosure exists for purposes of testing the witness's credibility. * * *"

Defendant's blanket motion for "all" grand jury testimony falls far short of the specificity required under *Hartfield.* To be entitled to inspect grand jury testimony, it is necessary to request particular testimony of particular

witnesses who have previously testified on direct examination by the state. Because defendant failed to specify the witness' testimony that he was requesting, the court did not err in failing to require production of the grand jury testimony.

Affirmed.