Submitted on record and briefs December 23, 1993, affirmed April 20, petition for review deniew denied July 19, 1994 (319 Or 406)

# STATE OF OREGON,
*Respondent,*

*v.*

# DALE ALAN BEATY,
*Appellant.*

## (10-91-10278; CA A76857)

873 P2d 385

Sally L. Avera, Public Defender, and Mary M. Reese, Deputy Public Defender, filed the brief for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Katherine H. Waldo, Assistant Attorney General, filed the brief for respondent.

Before Warren, Presiding Judge, and Richardson, Chief Judge,* and Edmonds, Judge.

EDMONDS, J.

---

* Richardson, C. J., *vice* Durham, J. pro tempore.

## EDMONDS, J.

Defendant appeals his conviction for sexual abuse in the first degree. ORS 163.427. He makes multiple assignments of error. We affirm.

Defendant was convicted of the touching or the digital penetration of the vagina of his girlfriend's four-year-old daughter. His first assignment of error concerns the trial court's sustaining of the state's objection to a question asked of defendant during his testimony that would have elicited the fact that his girlfriend had struck her daughter in the head and sent her to bed when the child denied that defendant had abused her. The state objected to the proffered testimony on the basis that it was in violation of OEC 412,[1] was irrelevant and was hearsay.

In a pretrial hearing, defense counsel told the court that defendant wished to testify about an incident that occurred approximately one month before the child claimed she had been abused. He said:

"[B]y way of offer of proof [defendant] would testify that there was an episode at the house where [the child] was sucking on a popsicle in the presence of him and another witness * * * and the popsicle suggested something sexual in the mind of the mother, * * *, and [the mother] said to [the child], 'Where did you learn to do that?' and the child said, 'Joshua [the child's brother] taught me.' and [the mother] said, 'No, who taught you to do that?' [The child] said again, 'Joshua,' and [the mother] slapped — and said, 'No, [defendant] did this,' and slapped the child and sent the child to bed and then [the mother] said to [defendant], 'I know you did it[.]' "

In response to the state's objection during trial, defense counsel referenced his pretrial offer of proof and told the court:

"We're not going to elicit any testimony about the popsicle. All we care about is that mother accuses [defendant] of

---

[1] OEC 412 provides, in part:

"(1) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible."

sex abuse on that occasion in the child's presence. The child denies it. She hits the child and sends her to bed.

"That's the extent of the testimony that we're seeking to elicit. We don't intend to elicit anything about any other person, what the child said or what the mother said, but just what the mother did, what the child and what the mother did in response."

The trial court sustained the state's objection on the basis that the relevance of the offered evidence depended on the admissibility of hearsay testimony.

■ On appeal, the state correctly does not argue that the proffered testimony contains inadmissible hearsay. OEC 801(3) provides:

" 'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" (Emphasis supplied.)

In his offer of proof at trial, defense counsel told the trial court that the testimony about what the mother and the child said were not being offered for the truth of the matter asserted, *i.e.*, that defendant had sexually abused the child. To the contrary, he said that the evidence was offered to demonstrate the state of mind of the mother and the child, and the mother's response to the child's denial. Defendant's theory of the case was that, because the child had been disciplined in the past when she denied that defendant had sexually abused her, she was claiming at trial that defendant had abused her so as to avoid punishment or other negative treatment by her mother. We agree with defendant that the trial court was wrong when it ruled that the proffered evidence was dependent on inadmissible hearsay evidence.

■ The state does argue that the proffered testimony was not relevant under OEC 401. Under that rule, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The threshold issue is whether a proper foundation was laid to establish the relevance of the testimony. OEC 104(2) provides:

> "When the relevancy of evidence depends upon the fulfill-
> ment of a condition of fact, the court shall admit it upon, or
> subject to, the introduction of evidence sufficient to support a
> finding of the fulfillment of the condition. Relevancy in this
> sense has been labeled 'conditional relevancy.' "

The legislative commentary to OEC 104 says:

> "Subsection (2) recognizes that in some situations the
> relevance of an item of evidence depends upon the existence
> of a particular preliminary fact. Relevancy in this sense has
> been labeled 'conditional relevancy.' "

A similar issue arose in *State v. Presley*, 108 Or App 149, 814 P2d 550 (1991), and our holding in that case is instructive. There, the defendant appealed his conviction for sexual abuse in the first degree and assigned as error the admission of a statement made by the child victim while she slept. At trial, the state offered the evidence under OEC 803(3). The trial court allowed the child's foster mother to testify that, one night, the child cried out in her sleep, "Daddy, get off me. Daddy, stop, leave me alone." On appeal, the defendant argued that the nocturnal utterance was not relevant. We held that the relevance of the child's utterance depended on the existence of underlying facts that were not established. We said:

> "The evidence simply failed to demonstrate a nexus between
> the child's vocalization and the alleged incidents. Most
> importantly, no testimony was presented to prove the actual
> dream imagery to which the child was responding. Instead,
> the jury was allowed to *infer* that the child was dreaming
> about defendant, that in the dream defendant was attacking
> or molesting her and that, because defendant had molested
> her in the dream, he had sexually abused her when she was
> awake. Only a mystic could have known the substance and
> significance of the dream in this case. The evidence itself
> could not support the factual inferences that the jury was
> permitted to make." 108 Or App at 152. (Emphasis in
> original.)

In this case, defendant offered to testify that the child was acting in a manner that her mother interpreted to be sexual in nature, that the mother demanded that the child admit that defendant had taught her to act in that manner, and that the mother had disciplined her when the child denied the mother's accusation. In his offer of proof, defendant's

counsel told the court that he did not intend to offer testimony that the child was sucking a popsicle at the time of the incident or about what the child or the mother said. Apparently, counsel was trying to avoid an earlier ruling by the court that evidence about the popsicle was not admissible under OEC 412, and the court's assertion during the colloquy that occurred before it ruled that the proffered evidence contained inadmissible hearsay.

■ However, defense counsel was required to make an adequate offer of proof for purposes of appeal, regardless of the court's earlier rulings or its expression about the admissibility of the proffered evidence. *State v. Busby*, 315 Or 292, 298, 844 P2d 897 (1993). The admissibility of the evidence depended on the existence in evidence of a preliminary fact. The evidence about the mother's actions was only relevant if it tended to make the existence of the fact that the child had falsely accused defendant of sexual abuse more probable. Therefore, to be relevant, there must have been evidence in the offer of proof from which a trier of fact could infer that the child understood that her mother was referring to sexual contact when the mother asked her who taught her to do "that." Without evidence about the manner in which the popsicle was being licked and what the mother and the child had said about the child's conduct, there is no evidence from which that inference could be drawn. As a result, the condition precedent for relevance was not met because of an inadequate offer of proof. The trial court did not err when it sustained the objection.

■ Second, defendant assigns as error the trial court's pretrial ruling that granted the state's motion in limine to exclude testimony from employees of Children's Services Division (CSD) about statements that the mother made to them about her and her children's beliefs.[2] Specifically, defendant disputes the trial court's refusal to admit evidence that:

---

[2] Although defendant assigns error to the trial court's granting of the state's motion in limine "with respect to point four," the substance of his assignment is about the trial court's ruling with respect to "point two" of the motion. We will treat the assignment as the state does on appeal, as an assignment of error to the ruling on point two.

"Her sister Debbie Gray told her sister — that's the mother's sister we're talking about — told Debbie Gray and Debbie Gray told CSD that [mother] constantly had asked the children if they could hear and see the people no one else could see and the children would say they could hear them too.

"We're offering this for the record, that these facts should be in the record at least for somebody to review in the future."

Defendant argues that the testimony was admissible under OEC 803(3) to show the mother's and the child's state of mind, and it is relevant because it supports his theory that the mother had delusional beliefs about defendant sexually abusing her child, which beliefs the child adopted.

■■ We understand defendant's offer to be that a CSD worker would testify that Debbie Gray told him about statements she had heard the mother and the children make.[3] The CSD worker's testimony would be hearsay, because he would testify about what Debbie Gray told him about what the mother and the children had said. To be admissible, each level of hearsay must satisfy an exception to the hearsay rule. OEC 805.[4] Even if the mother's and the children's statements were relevant and admissible under OEC 803(3), the statement by Debbie Gray to the CSD worker does not fall within any exception in OEC 803 or OEC 804 to the prohibition against hearsay testimony. *See* OEC 802. The trial court did not err in excluding it.

■ The other evidence defendant offered was:

"Zane Medlen[, the] CSD worker who investigated the case said [that the mother] thought people were living in the attic and [that the] children were also convinced of this."

Again, defendant argues that the evidence was admissible under OEC 803(3). The evidence was offered to prove the

---

[3] Defendant appears to argue in his brief on appeal that Debbie Gray would have testified about the statements that she heard the mother and the children make. However, that assertion does not appear in defendant's offer of proof at trial, and Debbie Gray was not called as a witness.

[4] OEC 805 provides:

"Hearsay included within hearsay is not excluded under ORS 40.455 [OEC 802] if each part of the combined statements conforms with an exception set forth in ORS 40.460 [OEC 803] or 40.465 [OEC 804]."

state of mind of the child. The offer of proof does not contain evidence of statements made by the child. The mother's impression that the child was convinced that people were living in the attic would not be admissible under OEC 805. Therefore, the trial court did not err in excluding Medlen's testimony.

■     Finally, defendant argues:

"The trial court erred when it denied defendant's motion for a continuance and his motion to exclude testimony after the state disclosed on the morning of trial that it intended to call a medical doctor as a witness at trial."

During a pretrial hearing on June 23, 1992, the prosecutor told the court:

"If I might explain to the court. This morning when we were discussing the motion in limine[, defense counsel] indicated his defendant was going to testify that he had offered to CSD workers and to the mother of the victim money to have a medical exam done of the child to prove his innocence and that CSD and the police and the mother did not take him up on that offer, therefore there is a significance to that.

"* * * * *

"The State would be calling [witnesses] who are the two physicians in this county to perform those examinations, given this fact pattern there would not have been any medical finding and therefore there would have been no medical examination."

Thereafter, defense counsel moved to exclude the medical witnesses' testimony on the basis that the state violated ORS 135.815, by not disclosing to defendant its intent to call those witnesses before the morning of the trial. The trial court denied the motion.

ORS 135.845(2) governs discovery after the initial exchange of materials by the prosecution and the defense. It provides:

"If, after complying with the provisions of ORS 135.805 to 135.873, a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, the party must promptly notify the other party of the additional material or information."

Here, the prosecutor represented to the court that it was not until the morning of the trial that she discovered that defendant was going to introduce evidence that he offered to pay for a medical examination, but that the police, CSD, and the mother had rejected his offer.

In *State v. Dillard*, 100 Or App 645, 787 P2d 1307 (1990), we held that there was no discovery violation when, on the first day of the trial, the defense became aware for the first time of the existence of a photograph. We said:

> "In the absence of a showing that a party intended to avoid compliance with ORS 135.845(2), there is no violation until the party 'finds' the material and does not 'promptly notify the other party of [it].' The defense advised the state of the existence of the photograph soon after it became aware of it. There was no discovery violation and the court erred in concluding to the contrary." 100 Or App at 648.

Here, the state had just learned about defendant's intention to testify about the offer when it told the court about its intention to call rebuttal witnesses. Under the circumstances, there was no violation of ORS 135.845(2), and the trial court properly denied defendant's motion.

■ ■ Also during the pretrial hearing, defense counsel moved for a continuance of the trial on the grounds that he needed more time to procure his own expert witnesses to refute the state's medical testimony. A motion for a continuance is addressed to the court's discretion and its ruling "will not be overturned unless there is shown to be an abuse of discretion and prejudice to defendant." *State v. Schroeder*, 62 Or App 331, 339, 661 P2d 111, *rev den* 295 Or 161 (1983). Here, there is no evidence of any prejudice to defendant's defense. The record shows that the state's witness, whose testimony prompted defendant's motion, was called on June 24, 1992, during the state's case-in-chief, and defendant cross-examined the witness. Defendant's case-in-chief began at approximately 4:30 p.m. on June 25, 1992 and concluded the following day. Defendant did not renew his motion after it was denied in the pretrial hearing, nor did he demonstrate that two days was an insufficient amount of time to procure his own expert witnesses. Furthermore, the state's medical testimony was prompted by defendant's own testimony. Defendant could have reasonably anticipated that the state

would produce evidence to rebut his testimony. Also, the record shows that numerous trial continuances had been granted previously and that the victim had been flown to Oregon from Florida at the state's expense. Under the circumstances, we cannot say that the trial court abused its discretion when it denied defendant's pretrial motion for a continuance of the trial.

Affirmed.