Argued April 25, reversed and remanded for new trial September 18, 1978

# STATE OF OREGON, *Respondent,*
*v.*
# KERRY SUZANNE McKENDALL, *Appellant.*
## (No. 17-179C, CA 8833)

584 P2d 316

Des Connall, Portland, argued the cause for appellant. With him on the brief were James Mountain and Connall & Spies, P.C., Portland.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

Defendant appeals from her conviction after a jury trial for murder. ORS 163.115. She makes several assignments of error, all of which are discussed below.

In the early morning hours of Saturday, September 18, 1976, Robert Firth was found shot to death in the cooler area of a 7-Eleven Food Store he operated in Aloha, Oregon. Early the next morning, September 19, 1976, a suspect, Michael Lynn Umscheid, was arrested on outstanding warrants for unrelated crimes.[1]

On Sunday, September 19, 1976, Beth Bates, an employe at the Firth 7-Eleven store, contacted police and related information regarding the alleged involvement of the victim's wife Donna Firth, Bette Carter and the defendant in the shooting. Based on his discussion with Bates, the district attorney ordered the arrest of defendant as a material witness. Prior to ordering defendant's seizure as a material witness, the district attorney did not seek judicial authorization.

On September 20, 1976, shortly before midnight, the police went to defendant's home and took her into custody as a material witness. In the early morning hours of September 21, 1976, immediately after arriving at the detective's office, defendant was interrogated by Detective Juul. Prior to questioning defendant, Juul orally advised her of her *Miranda*[2] rights which defendant indicated she understood. During this initial interview defendant implicated Donna Firth, Bette Carter, Michael Umscheid and herself in the murder of Robert Firth. Detective Juul then left defendant and conferred with the district attorney who advised Juul to place defendant under arrest for murder. Juul returned to defendant and prior to

---

[1] Umscheid, who was later accused of actually shooting Firth, was tried and convicted for Firth's murder. The conviction was subsequently reversed and remanded for a new trial on a ground not involved in the case at bar. *State v. Umscheid,* 31 Or App 1249, 572 P2d 362 (1977).

[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

placing her under arrest obtained a taped statement basically the same as defendant's first unrecorded statement. The detective then advised defendant that she was under arrest for murder.

## I

Defendant's first assignment of error claims the trial court erred in denying defendant's motion to suppress evidence of her statements made to Detective Juul prior to her arrest. Defendant claims that her arrest as a material witness did not comport with the requirements of ORS 136.607 through 136.615, because the order for her arrest did not originate with a magistrate or judge. She argues that her statements were the product of this unlawful arrest.

In *State v. Lloyd,* 22 Or App 254, 538 P2d 1278 (1975), we held that material witness commitment orders must originate with a magistrate or judge. Specifically we said:

"* * * Absent the specific grant of authority embodied in ORS 136.607 through 136.615 the state lacks the power to infringe upon the rights of an individual by 'detaining' him as a material witness; strict compliance with the limited procedure provided for in those statutes is, as noted above, required. Because that procedure was not, in fact, followed in this case, defendant's detention as a material witness was 'illegal.' " 22 Or App at 276.[3]

The arrest of defendant in this case was therefore improper.

Having concluded that the arrest was "illegal," we must next determine whether the statements given by defendant to the police should be suppressed. The state argues that: (1) under *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963), the taint of

---

[3]The state conceded in its brief that the arrest of defendant under the material witness statutes was illegal. On oral argument, however, the theory was advanced that exigent circumstances of some sort might justify the action taken by the district attorney in this case. Assuming arguendo that exigent circumstances would be relevant, there were none here. *But see, State v. Lloyd,* 22 Or App 254, 538 P2d 1278 (1975).

defendant's statements by the illegal arrest was sufficiently attenuated; (2) evidence of the events recounted in the statement would inevitably have been discovered; and (3) the error, if any, was harmless or waived.

## Fruit of the Poisonous Tree

In *Wong Sun v. United States, supra,* the Supreme Court held that statements made following an illegal arrest may nonetheless be admissible if the evidence to which objection is made " '* * * has been come at by means sufficiently distinguishable to be purged of the primary taint.' " 371 US at 488, citing Maguire, Evidence of Guilt, at 221 (1959).

■ Two goals are to be effectuated by the "poisonous fruit" doctrine:

"* * * [P]reventing the admission into evidence of statements made under the 'oppressive circumstances' surrounding an illegal arrest which are likely to overcome the arrestee's 'free will' (371 U.S. at 486 n. 12, 83 S.Ct. 407), and * * * curtailing arrests found to be in violation of the Fourth Amendment by denying the officers the fruits thereof * * *." *Allen v. Cupp,* 426 F2d 756, 758 (9th Cir 1970).

This is not a Fifth Amendment inquiry, but, rather, is an inquiry under the Fourth Amendment to insure that the policies and interests of that amendment are considered and protected.

In *Brown v. Illinois,* 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975), the Supreme Court identified four factors that are determinative of whether statements should be excluded:

"* * * The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they

are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances * * * and, particularly, the purpose and flagrancy of the official misconduct are all relevant. * * *" (Footnotes omitted.) 422 US at 603-04. *See also, State v. Lloyd, supra.*

■■ In this case the trial court found both that the arrest was legal and that the statements thereby obtained were voluntarily made. However, as noted in *State v. Lloyd, supra,* 22 Or App at 278:

"* * * Although the circuit court concluded that defendant had 'freely and voluntarily' conversed with officers while held as a material witness, that court obviously did not—having held as a preliminary matter that defendant's detention as a material witness was legal—specifically consider whether the connection between what we have found to be an illegal detention and the statements sought to be suppressed had ' "become so attenuated as to dissipate the taint." ' *Wong Sun v. United States,* supra, 371 US at 491. * * *"

Furthermore, like *State v. Lloyd, supra,* this case involves a flagrant violation of the material witness statute, not a mere technical violation (such as arresting in good faith reliance on an invalidly issued warrant). Hence, the burden is upon the state to show by clear and convincing evidence that the taint from the illegal detention was dissipated by the time the statement was made. *State v. Lloyd, supra* at 278-79. The fact that *Miranda* rights were given and understood does not suffice and, since there is no other evidence of events or circumstances which could have dissipated the taint, the trial court could not have found the taint purged. Therefore, the motion to suppress should have been granted.

### Inevitable Discovery[4]

■■ The state also argues that the facts contained within defendant's statement to the police would have

---

[4]The inevitable discovery exception to the exclusionary rule was codified in 1973, at ORS 133.683, and explained by this court in *State v. Garrison,* 21 Or App 155, 157, 534 P2d 210, *rev den* (1975); *see also, State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978).

been inevitably discovered during the subsequent investigation independent of defendant's illegally obtained confession; therefore, the confession itself is not rendered inadmissible by the taint of the illegal arrest.

However, that facts contained within the statement would have been discovered independently of defendant's illegally obtained confession does not render the statement itself admissible under the inevitable discovery exception to the exclusionary rule. It is the statement, not the facts contained therein, which should have been suppressed. Since the record does not support a finding that defendant's statement inevitably would have been made, the statement does not qualify for the exception.[5]

The illegal arrest of defendant in this case resulted in the state's obtaining incriminating statements. By suppressing the statements the police would be deterred from making illegal arrests. The state may still prove the facts contained *within* the statement (but not the statement itself) if it establishes that its evidence of those facts was obtained from independent sources or would have been inevitably discovered. This issue will require an appropriate preliminary finding by the trial court.

## Waiver

The state argues that defendant waived her constitutional claim that her pretrial statements were the product of the illegal arrest by taking the stand and admitting the truth of the statements. *See, State v. Frazier,* 245 Or 4, 418 P2d 841 (1966); *State v. Unsworth,* 240 Or 453, 402 P2d 507 (1965), *cert den* 382 US 1014 (1966).

*Frazier* and *Unsworth* dealt with situations where the defendant asserted a constitutional right on appeal that was not defined at the time of trial and therefore

---

[5]Defendant testified that she doubted she would have given a statement to the police before talking with her lawyer, had she known she was going to be arrested.

not raised at that level. *See, State v. Poole,* 31 Or App 925, 931 at n 2, 572 P2d 320 (1977). Those cases are distinguishable from the present case where defendant moved prior to trial to exclude the evidence on the same grounds raised on appeal and, after denial of her motion, testified as to the statements and her involvement in the crime. This case is analogous to *State v. Poole, supra* (not involving a constitutional right), where we said that once the jury has been informed of the statements, there is no reason to require defendant to ignore them for the remainder of the trial in order to preserve her right to appeal. *State v. Poole, supra* at 931.

### Harmless Error

■ The state argues also that the trial court's error in admitting defendant's statements was harmless beyond a reasonable doubt. It contends that by testifying at trial to the truth of the pretrial statements and, in fact, to greater involvement in the crime, defendant could not be prejudiced by the admission of the statements into evidence. Defendant counters by claiming that had the statements been excluded she would not have had to testify because the only evidence connecting her to the crime came from the otherwise uncorroborated testimony of her codefendants. Therefore, it follows that a motion for acquittal would have been properly granted had it been made under such circumstances. ORS 136.440; *State v. Caldwell,* 241 Or 355, 405 P2d 847 (1965).

We conclude that under the circumstances of this case, where the court's error forced defendant to make a Hobson's choice of testifying and presenting evidence to explain her involvement as indicated by her pretrial statements, or not testifying and facing the prospect that her pretrial statements would corroborate her codefendant's accusations, it was not harmless error beyond a reasonabe doubt to admit the pretrial statements.

Since the case is being reversed and remanded for a new trial, and the problems raised by defendant's other assignments of error are likely to recur on retrial, we will consider them here.

## II

■ Defendant assigned as error the failure of the trial court to require the state to provide, for the purpose of cross-examination, transcripts of the relevant grand jury testimony of prosecution witnesses who testified at trial. This issue arises in a rather unusual procedural context. Initially, the trial court granted defendant's request for transcripts of grand jury testimony and ordered the state to produce for defense examination, at the conclusion of a state's witness' direct examination, a transcript of the grand jury testimony of that particular witness. Subsequent to this order, the state filed a petition for a peremptory writ of mandamus in the Supreme Court in a case entitled *State of Oregon ex rel Redden v. Pihl* (Sup Ct No. 25277 (1977)). The court issued the writ commanding the trial judge to vacate his disclosure order.

As defense counsel conceded during oral argument, under the circumstances of this case we may not review the order of the circuit court denying the disclosure of the grand jury testimony. This issue must be resolved in the Supreme Court from which the peremptory writ issued.

## III

■ Defendant also assigns as error the following:

During the investigation of the case, and during preparation for trial, the state interviewed the victim's wife, Donna Firth, and another codefendant, Roy David Mattingly.[6] Written memoranda of all the statements made by Mattingly and Firth were not made by the state. At trial defendant requested that the prosecution memorialize the statements of the

[6]Mattingly allegedly was with Umscheid at the 7-Eleven store when Firth was shot, and served as a lookout while the murder took place.

witnesses and provide them to the defendant. The trial court denied the request and defendant now claims that the trial court erred in doing so.

Defendant argues that the pretrial discovery statutes, ORS 135.805 to 135.873, require in this instance that the state reduce to writing the oral statements of witnesses and turn them over to the defendant.

ORS 135.815(1) provides:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:

"(1) The names and addresses of persons whom he intends to call as witnesses at any state of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."

The statute does not expressly provide that the state, or the defendant for that matter, under ORS 135.835(1), reduce oral statements of witnesses to writing so that they may be discovered. We decline to read such a broad requirement into the statute.

Defendant claims, however, that where the state avoids taking written notes during interviews of witnesses for the purpose of thwarting defense discovery, the spirit of the pretrial discovery statutes is violated, and the appropriate remedy is to reduce oral statements to writing or exclude the witness' testimony.[7] Defendant relies upon the case of *People v. Manley,* 19 Ill App 3d 365, 311 NE2d 593 (1973), which states:

"* * * When the trial court determines within its discretion that the reason for the failure to reduce such a statement to writing is to avoid discovery, it may properly order that the statement be reduced to writing. * * *" 19 Ill App 3d at 370, 311 NE2d at 597.

[7]Defendant's assignments of error relating to oral statements of Mattingly are moot because Mattingly did not testify.

We need not decide whether such a rule is statutorily mandated in Oregon because under the facts in this case there is no basis for inferring that the state's purpose in not memorializing all of its witnesses' pretrial statements was to avoid defense discovery. Therefore, even assuming for the sake of argument that such a rule existed in Oregon, the trial court did not abuse its discretion in denying the defendant's request for written memoranda of the state's witnesses' pretrial statements.[8]

## IV

Under her final assignments of error defendant claims that the trial court abused its discretion in admitting seven photographs of the murder victim's body. Defendant argues that the gruesome photographs were irrelevant to this case because the defendant, who was being tried under a theory of accomplice liability, stipulated that Robert Firth was the victim of a murder. The defendant claims that the only material issue in the case was her mental state, *i.e.,* whether she intended that the victim be killed.

Bearing in mind that our discussion of this issue is only for the purpose of precluding error upon retrial, we conclude that not only the photographs of the victim's body but also all other evidence concerned only with the fact and cause of the victim's death should have been excluded.

We have frequently stated that the question of whether exhibits, such as those here involved, possess sufficient probative value in relation to their possible prejudicial effect to warrant their admission is within the sound discretion of the trial court. *See, e.g., State v. Batchelor,* 34 Or App 47, 578 P2d 409 (1978). However,

---

[8]Defendant also argues that under *State v. Foster,* 242 Or 101, 407 P2d 901 (1965), and *Dennis v. United States,* 384 US 855, 86 S Ct 1840, 16 L Ed 2d 973 (1966), the prosecution was required to reduce state's witnesses' pretrial statements to writing and disclose them to defendant. *Foster* and *Dennis* dealt with statements that were already reduced to writing and are not applicable to the instant case.

when a defendant offers to stipulate to a fact, proof of the fact would be prejudicial to the defendant, and the evidence offered in proof is not probative of any issue other than that which the stipulation addresses, the evidence is inadmissible. *See, State v. Zimmerlee,* 261 Or 49, 54, 492 P2d 795 (1972); *State v. Wilson,* 34 Or App 429, 433-34, 578 P2d 822 (1978). In this case defendant was being tried for accomplice liability for the victim's murder, so that proof of the murder was irrelevant to any other issues.

Reversed and remanded.

**TANZER, J.,** concurring.

I do not join in the dictum that a material witness can never be detained without previously obtaining a warrant. Although we so stated in *State v. Lloyd,* 22 Or App 254, 538 P2d 1278 (1975), there is no need to perpetuate that absolute statement in this case. Exigent circumstances are conceivable in which we might well hold it reasonable to detain a material witness without first obtaining a warrant. It is sufficient for this case to hold, and I would so hold, that there were no exigent circumstances to justify the arrest of the defendant without a warrant. Otherwise, I join the majority in all respects.