Argued and submitted June 30, 2015, reversed and remanded October 12, 2016

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JESSE RANDOLPH HENSLEY,**
*Defendant-Appellant.*

Marion County Circuit Court
12C44321; A154760

383 P3d 333

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With her on the reply brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section. Jesse Hensley filed the supplemental brief *pro se.* Ernest G. Lannett, Chief Defender, Criminal Appellate Section, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the supplemental brief for appellant.

Rebecca M. Auten, Assistant Attorney General, argued the cause and filed the brief for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General. Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the supplemental brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

Defendant appeals a judgment of conviction for five counts of first-degree robbery, ORS 164.415, and five counts of being a felon in possession of a firearm, ORS 166.270(1). Defendant assigns error to the trial court's denial of his motion to suppress statements that he made during a police interrogation. At the time of the interrogation, defendant was represented by appointed counsel for a charge of felon in possession of a firearm, yet police did not notify counsel before questioning defendant. During the interrogation, defendant confessed to the charged felon-in-possession offense as well as to five armed robberies for which he had not yet been charged. The convictions challenged by defendant on appeal arise from those five robberies.

On appeal, defendant argues that questioning about one of the robberies—the robbery of a US Bank—violated his right to counsel under Article I, section 11, of the Oregon Constitution. According to defendant, it was reasonably foreseeable that questioning about the US Bank robbery would produce incriminating statements about the charged offense because the two incidents occurred in the same jurisdiction within a short period of time and involved the same weapon. Defendant argues that the trial court should have suppressed all of the statements he made during the interrogation because they were fruits of the constitutional violation. In response, the state concedes that police violated defendant's right to counsel by questioning him about the US Bank robbery and agrees that defendant is entitled to reversal with respect to the convictions stemming from that robbery. The state nevertheless argues that we should affirm the remaining convictions because police would have inevitably obtained defendant's confessions despite the unlawful questioning about the US Bank robbery. We conclude that the state did not provide sufficient evidence to support a conclusion that, in the absence of the unlawful interrogation, predictable investigatory procedures would have inevitably produced defendant's confessions, and, therefore, the trial court erred in denying the motion to suppress. Accordingly, we reverse and remand.

We review a trial court's denial of a motion to suppress for legal error. *State v. Garcia*, 276 Or App 838, 839,

370 P3d 512 (2016). We are bound by the trial court's findings of historical fact that are supported by evidence in the record. *State v. Bailey*, 356 Or 486, 489, 338 P3d 702 (2014). We presume that a trial court made implicit factual findings necessary to support its ultimate conclusion, and we are bound by those implicit findings if they are supported by the record. *Pereida-Alba v. Coursey*, 356 Or 654, 671-72, 342 P3d 70 (2015).

The issues on appeal involve a total of six incidents that occurred in Marion County. As to the first incident, on the basis of surveillance video showing him with a gun in a Plaid Pantry store, defendant was charged with being a felon in possession of a firearm. The trial court appointed counsel to represent defendant in that case. The other incidents are five armed robberies: two of the Lone Oak Tavern (one in 2010 and one in 2012), and one each of Dede's Deli, Circle K, and a US Bank branch. At the time of the interrogation, the state had not charged defendant with any offenses stemming from those five robberies.

After defendant failed to appear in the Plaid Pantry case, two police officers arrested him. One of the officers, Corporal Baskett, was the lead investigator for the 2012 Lone Oak Tavern robbery and had evidence implicating defendant in that robbery. Baskett also suspected that defendant was involved in the US Bank robbery, which had occurred six days before the Plaid Pantry incident. The other arresting officer, Detective Kistner, was the lead investigator for the US Bank robbery. Both officers were aware that defendant was a suspect in both the US Bank robbery and the 2012 Lone Oak robbery. Before the interrogation, Baskett had spoken with Officer Manitsas, the arresting officer in the Plaid Pantry case, about defendant's pending felon-in-possession charge, and Baskett had watched the Plaid Pantry surveillance video showing defendant with a gun.

Baskett and Kistner questioned defendant at the police station, first providing *Miranda* warnings. Both officers knew about the felon-in-possession charge stemming from the Plaid Pantry incident, but neither of the officers attempted to contact defendant's attorney. At the beginning of the interview, Kistner told defendant that he was on video

robbing the US Bank, and that police had received calls implicating him.[1] Kistner asked defendant whether the gun used during the US Bank robbery was "real." Defendant responded that he had not "handled a real gun" since 1993.

Defendant then made some comments about Officer Manitsas, the arresting officer in the Plaid Pantry case. Kistner confirmed that defendant was referring to the Plaid Pantry incident, and Kistner told defendant that he was aware of the felon-in-possession charge. Kistner asked defendant whether he had dropped the gun in the Plaid Pantry store, and defendant denied having done so. Kistner then told defendant that he had watched the Plaid Pantry surveillance video showing defendant hiding the gun. Kistner then told defendant that police "hear[d]" that defendant was a "bank robber" and that defendant was "going to take a hit on all this." Defendant responded, "The difference between what kind of hit I take here is a couple of different issues," and suggested that he had information about "armed robberies."

Defendant then explained why he would prefer a federal sentence to a state sentence. Defendant hypothesized that, if he was "completely truthful" about having "[done] something with somebody," he "hope[d] that it gets me somewhere around maybe just the next 10 years." Kistner went on to state:

> "I know you've been involved in other crimes. Will I prove all of them? No.. Will I ever know about all of them? No. But I mean there is a couple good cases on you. You know that. The thing with the gun with Manitsas, I'm uncomfortable talking about that, because it's not my case. If you want us to make a statement about it, that's great."

Defendant suggested that the officers could, as a "tactical maneuver," show him the video of the Plaid Pantry incident, so defendant could see what he would "face in court," and he would then decide whether or not to "come clean." Kistner stated that he and other officers were not "the deal makers" but told defendant that "some people

---

[1] The interview transcript does not attribute statements to either officer. Because the parties attribute to Kistner almost all of the police statements, we do so as well.

would like closure" on unsolved cases, and the "people who make the deals will see that." Defendant expressed frustration because "players" that had "help[ed] him out" had decided to "sell [him] out." He continued, "[W]hy should I take the burn and fucking man up and * * * go do all this fucking time, when they are fucking getting away with * * * equal parts of what I've done[?]" After some back and forth, Kistner stated:

> "[W]hat I'm going to ask you to do today is tell me about the US Bank on State Street. These other cases, they aren't my cases. I mean I would love to take a statement if that's what you want to do, but I think the case with Manitsas, frankly, I've looked at the pictures. I see you walking into the bank. * * * If you want to talk to Manitsas or me or Corporal Baskett about the Plaid Pantry, we'll be glad to do it."

After some discussion about the potential sentences defendant faced, defendant told Kistner that he would tell the truth about the Plaid Pantry incident and "just weigh my odds of my offer after that."

Defendant then confessed to both the Plaid Pantry and the US Bank incidents. He told Kistner that the same gun was involved in both. Defendant described how he committed the US Bank robbery, including how he obtained the gun, how he split the proceeds with the person who had given him the gun, and his intention to commit another robbery under the same arrangement.

Kistner then asked defendant about the other armed robberies that defendant had mentioned earlier in the interview. Defendant told Kistner that defendant had previously told Baskett to "talk to [his] lawyer" after Baskett had attempted to question defendant about a "shotgun robbery"—referring to the second Lone Oak robbery. Kistner responded:

> "And which brings us to you've been advised and now we are talking about that. Are you—you said you want to think about it for a minute. That's fine. But are you willing to talk to us about that without first talking to an attorney? Because I can tell you— * * * the investigation didn't end at that point * * *."

Defendant asked if they could "go off the record for a second" so he could "weigh[ ] the odds of coming completely clean" or "just sticking with what I got right here."

After some back and forth about whether defendant would face both state and federal charges, Kistner shifted the discussion to the 2012 Lone Oak robbery. Kistner told defendant that he had "an awareness" that defendant was involved, "but my preference would be for you to tell us what you did, and then someone with the authority to look at that and make a judgment on it." Kistner stated that he could not provide "guarantees," while stating, "If we don't talk about it today, we are probably not going to talk about it again * * * unless, you know you could convince your attorney." Kistner went on:

> "I mean we know one is the Lone Oak. I mean that's pretty much a given. But around the issue here, the other ones I could guess on, but I'm a little sketchy on. You know, I have a couple theories, but * * * I have nothing to arrest you on related to the three. I mean the two cases we talked about earlier, yes, you know, one you are already under arrest for and one you will be ultimately. But the other ones, you know, would you be willing to tell me the nuts and bolts of your involvement in it, without naming anybody or any accomplices?"

Kistner asked defendant whether he was "kind of done with this lifestyle," and defendant replied, "Yeah." Kistner suggested that defendant "come forward with everything," "do [his] time," and "get out and be clean and enjoy whatever family and the rest of life you have." Defendant responded, "[O]bviously I'm going to jail," and Kistner said, "Sure." Defendant told Kistner, "[Y]ou need to give me whatever time to think about it."

Defendant then confessed to the Lone Oak robberies in 2010 and 2012. Kistner asked defendant about the "other ones." Defendant admitted to robbing Dede's Deli, a convenience store. Defendant also confessed that he had recently robbed a Circle K, another convenience store, using the same gun involved in the Plaid Pantry incident.

Defendant was charged with five counts each of first-degree robbery and felon in possession of a firearm.

Defendant moved to suppress all of the statements made to police during the interrogation, arguing that his statements were obtained in violation of his right to counsel or were derivative of that violation. Defendant argued that the US Bank robbery was "factually related" to the felon-in-possession charge for which he had appointed counsel and that police were therefore not permitted to question him about that robbery in the absence of his attorney.[2] Defendant argued that suppression of all of the statements was the appropriate remedy because police exploited the violation to leverage defendant's confessions to the other four robberies.

In opposition, the state argued that the right to counsel only attached to defendant's felon-in-possession charge and that the US Bank robbery was not "factually related." In the alternative, the state argued that, even if police violated defendant's right to counsel with respect to the US Bank robbery, police did not exploit the unlawful interrogation to obtain defendant's confessions to the remaining robberies. To disprove exploitation, the state argued that police would have "inevitably" obtained defendant's statements, that there was "such a tenuous factual link between the initial police conduct and the four confessions" that the illegality cannot be properly viewed "as the source of the evidence," and that the confessions were obtained from "an independent source." According to the state, defendant confessed because he was angry at his coconspirators for implicating him, "he wanted out of the lifestyle, he wanted a clean slate," and he was "hoping that by being cooperative he [could] get federal time and little time."

During the suppression hearing, Baskett testified that defendant was a suspect in the 2012 Lone Oak robbery "before he ever opened his mouth." Defendant testified that he had tried to end the interrogation twice and that he was not "entirely" of sound mind at the time. On cross-examination, defendant testified that he did not keep speaking to police to get favorable treatment and that his "deal

---

[2] Recently, the Supreme Court clarified that the relevant inquiry is not whether the two offenses are "factually related," but whether "questioning about uncharged offenses may foreseeably lead to * * * incriminating information about the charged offense." *State v. Prieto-Rubio*, 359 Or 16, 36, 376 P3d 255 (2016).

making" with respect to a federal sentence had "nothing to do with what I was trying to accomplish." Defendant testified that what he was "trying to accomplish" was to "[g]et stuff off my chest and clear the air and try to get * * * another chance of getting out." Defendant told the prosecutor, "But if I might say so, you derailed that with a 450-month offer." The prosecutor responded, "So you wanted to get this off your chest. Start another life." Defendant responded, "That was originally why I confessed, yeah."

The trial court denied defendant's motion to suppress. The court concluded that police did not violate defendant's right to counsel in the Plaid Pantry felon-in-possession case because "he was questioned about factually unrelated robberies as a matter of law." The trial court also concluded that police "did not exploit" defendant's confession to the US Bank robbery but did not explain its reasoning or make explicit findings to support that conclusion.[3] The trial court expressly found that defendant did not invoke his right to counsel during the interview, that he was not intimidated by the police officers' questioning, and that he "was given an opportunity to think before he gave answers" when he requested such an opportunity. After the trial court denied his motion to suppress, defendant entered a conditional guilty plea on Counts 1 through 4 and Counts 9 and 10.[4] A jury convicted him on Counts 5 through 8.[5]

On appeal, defendant renews his argument that police violated his right to counsel and that suppression of all of the incriminating statements is the proper remedy. The state concedes that the police were not permitted to

___

[3] The trial court also concluded that defendant "waived his right to counsel by initiating a conversation on the Felon in Possession of Firearm case and the US Bank robbery." The state does not defend the trial court's ruling on that basis. Article I, section 11, prohibits the police from interrogating a represented defendant about the charged offense without notifying appointed counsel unless the defendant "initiated the conversation and knowingly and intentionally waived his or her right to counsel." *State v. Gilmore*, 350 Or 380, 382, 256 P3d 95 (2011). The record here does not support any inference that defendant initiated the conversation with Kistner or Baskett.

[4] Counts 1 and 2 pertain to the Circle K robbery on May 29, 2012. Counts 3 and 4 pertain to the US Bank robbery on May 25, 2012. Counts 9 and 10 pertain to the Lone Oak Tavern robbery on October 23, 2010.

[5] Counts 5 and 6 pertain to the Lone Oak Tavern robbery on January 26, 2012. Counts 7 and 8 pertain to the Dede's Deli robbery on November 27, 2011.

question defendant about the US Bank robbery and that the trial court should have suppressed defendant's statements about that robbery.[6] Accordingly, because defendant's conditional guilty plea includes charges arising from the US Bank robbery, the state agrees that we should reverse the judgment with respect to those counts encompassed by his guilty plea.[7] The state nevertheless argues that we should affirm the judgment of conviction with respect to the counts tried to a jury. According to the state, police did not exploit the unlawful interrogation about the US Bank robbery to obtain defendant's statements regarding the four other robberies because defendant would have inevitably confessed to them despite the illegality.

Article I, section 11, provides that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel." After a defendant has been charged with a crime and the right to counsel has attached, Article I, section 11, prohibits police from questioning that defendant about the charged crime without first notifying his or her lawyer. *State v. Prieto-Rubio*, 359 Or 16, 18, 376 P3d 255 (2016). This restriction extends to any inquiry for which it is "reasonably foreseeable to a person in the position

---

[6] In its supplemental briefing, the state points out that *Prieto-Rubio* expressly left open the question of whether a right-to-counsel violation justifies exclusion of evidence *only* as to the case for which defendant had appointed counsel at the time of the unlawful interrogation. *See Prieto-Rubio*, 359 Or at 38 n 5. However, because that issue was not raised in the initial briefing, the state concedes for purposes of this case that an exploitation analysis is appropriate.

[7] Under ORS 135.335(3), a defendant who enters a conditional guilty plea and "finally prevails on appeal may withdraw the plea." The Supreme Court has interpreted "the plea" to mean "the entire plea," even when some of the counts encompassed by the plea would not otherwise be subject to the reversal. *State v. Tannehill*, 341 Or 205, 210-12, 141 P3d 584 (2006); *id.* at 211 (recognizing that a "single guilty plea may embody a series of interrelated concessions between the parties and allows the defendant to withdraw the entire plea when one part of the agreement fails"). In this case, defendant's conditional plea includes counts related to not only the US Bank robbery, but also the Circle K robbery and the first Lone Oak Tavern robbery. The plea agreement did not specify that reversal *as to some counts would not permit defendant to withdraw his plea* with respect to the other counts. *See State v. Cruz-Renteria*, 250 Or App 585, 594-95, 280 P3d 1065 (2012) (reasoning that a defendant must be permitted to withdraw his entire conditional plea unless the plea was predicated on the ultimate outcome with respect to only certain counts). Thus, the state's concession would permit defendant to withdraw his entire plea, even though the state argues that the trial court only erred insofar as it declined to suppress defendant's statements about the US Bank robbery.

of the questioner that the questioning will elicit incriminating information involving the charged offense." *Id.* at 36-37. Whether questioning about an uncharged offense implicates the right to counsel "is an objective test that does not turn on the subjective impression of the questioner," and turns upon "the facts and circumstances of each case." *Id.* at 37. Relevant considerations include "temporal proximity, location, [the] nature of defendant's conduct, and the nature of the investigation process itself[,] and whether it involves the same or separate personnel." *Id.* at 36.

We accept the state's concession that, under *Prieto-Rubio*, police violated defendant's right to counsel when they questioned him about the US Bank robbery. A reasonable questioner in Kistner's position would have foreseen that questions about the US Bank robbery might elicit incriminating evidence about the charged felon-in-possession case for which defendant had counsel. First, defendant used the same gun in the charged case and the US Bank robbery, and therefore, the two incidents were linked by overlapping evidence. Because both offenses involved a firearm and occurred within a short time period, a reasonable questioner would have foreseen a possibility that the two incidents involved the same firearm. *See id.* at 37-38 (concluding that a reasonable questioner "would have foreseen" that defendant might make statements about the charged offense when it was "impossible" to avoid "some overlap between the charged and uncharged offenses" (internal quotation marks omitted)). In addition, the two offenses were committed in the same jurisdiction within six days of each other, and the investigating officers were sharing information with each other about their respective cases. *See id.* at 36 (citing with approval our consideration of "[common] location *** and the nature of the investigation process itself" in the right-to-counsel inquiry); *see also State v. Prieto-Rubio*, 262 Or App 149, 158, 324 P3d 543 (2014), *aff'd*, 359 Or 16 (2016) (citing *State v. Potter*, 245 Or App 1, 11, 260 P3d 815 (2011), for the proposition that it was "important that the investigators handling the different crimes were working 'collaboratively'"). Thus, the two offenses were intertwined in such a way that questioning about one could foreseeably lead to incriminating responses about the other (as it did).

Accordingly, we accept the state's concession, conclude that police violated defendant's right to counsel, and reverse the judgment of the trial court with respect to Counts 1 through 4 and Counts 9 and 10, the counts encompassed by defendant's guilty plea.

The state nevertheless argues that Counts 5 through 8, the counts on which the jury convicted defendant, may stand, despite the illegality, because the trial court correctly concluded that police did not exploit that illegality to obtain defendant's confessions to the four other robberies. We conclude that the state has not offered sufficient evidence to meet its burden of showing that police did not exploit the illegality.

If a defendant is interrogated in violation of his right to counsel under Article I, section 11, any evidence discovered as a result—including evidence of other crimes—must be suppressed unless the state demonstrates that the evidence was not the product of the constitutional violation. *State v. Beltran-Solas,* 277 Or App 665, 669, 372 P3d 577 (2016) (citing *State v. Staunton,* 79 Or App 332, 339, 718 P2d 1379 (1986)). To determine whether evidence is "tainted" by the constitutional violation, the critical question is whether police obtained the evidence by exploiting the illegality or "'by means sufficiently distinguishable to be purged of the primary taint.'" *Staunton,* 79 Or App at 338-39 (quoting *Wong Sun v. United States,* 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963)); *see also State ex rel Juv. Dept. v. O'Farrell,* 191 Or App 627, 632, 83 P3d 931 (2004), *rev den,* 339 Or 230 (2005) ("Exploitation occurs when police take advantage of their unlawful conduct * * * by trading on information unlawfully obtained in order to leverage consent, waiver, or some concession from the accused." (Citation omitted.)). The state can disprove exploitation by showing one of three things: "(1) the police inevitably would have obtained the evidence through lawful procedures; (2) the police obtained the evidence independently of the illegal conduct; or, * * * (3) the illegal conduct was independent of, or only tenuously related to the disputed evidence." *State v. Unger,* 356 Or 59, 64, 333 P3d 1009 (2014) (internal quotation marks omitted).

Although the state below invoked all three of the ways to disprove exploitation, we understand the state on appeal to be relying exclusively upon its inevitable-discovery theory. In support, the state argues that police had overwhelming evidence inculpating defendant in the second Lone Oak robbery and therefore would have interrogated him about that robbery anyway. According to the state, when confronted by that evidence, defendant would have confessed to all of the other robberies because he was angry, he wanted favorable treatment, and he wanted to give up his life of crime.

To satisfy its burden under the inevitable-discovery doctrine, the state was required to show by a preponderance of evidence "(1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question." *State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986). A conclusion that predictable investigatory procedures would have produced the evidence at issue must be substantiated by factual findings that are "fairly supported by the record." *Id*. at 227; *accord State v. Lovaina-Burmudez*, 257 Or App 1, 13-14, 303 P3d 988, *rev den*, 354 Or 148 (2013). It is not sufficient for the state to simply show that evidence "might or could have been otherwise obtained." *Miller*, 300 Or at 226 (internal quotation marks omitted). When the evidence at issue is "well concealed," the state must make a "more exact showing" of how the discovery would have occurred. *Id*. at 227.

The trial court did not make clear which of the state's arguments supported its conclusion that police "did not exploit" defendant's confession to the US Bank robbery. Accordingly, we do not defer to implicit factual findings because no such findings were "necessary" to the trial court's conclusion. *See Pereida-Alba*, 356 Or at 670-71 (holding that a reviewing court will only presume that the trial court made implicit factual findings when such findings were necessary to its ultimate conclusion).

Thus, our task is to determine whether the state raised sufficient evidence from which the trial court could,

together with "nonspeculative derivative inferences," find the predicate facts necessary to support the state's inevitable-discovery argument. *Cf. Lovaina-Burmudez*, 257 Or App at 14; *see id.* at 13-14 (reasoning that, when reviewing "alternative grounds for affirmance raised before, but not resolved by the trial court," we will not remand a question to the trial court unless the state presented "legally sufficient evidence to permit the trial court to endorse the alternative ground"). Here, our inquiry is whether the state put forth sufficient evidence from which the trial court could find (1) that police would have interrogated defendant about the 2012 Lone Oak robbery and (2) that during that interrogation, defendant *would have* confessed to the Lone Oak robberies, the Circle K robbery, and the Dede's Deli robbery.

We have had only a few occasions to address the inevitable-discovery doctrine when the disputed evidence is a voluntary statement. Our cases demonstrate that the state faces a difficult task in making an exact showing that, in the absence of an illegality, a person would have inevitably made incriminating statements.

In a recent post-conviction case, we concluded that the state would not have been able to meet its burden to show that the inevitable-discovery doctrine permitted the admission of unlawfully obtained statements. *Oatney v. Premo*, 275 Or App 185, 220, 369 P3d 387 (2015). In *Oatney*, police played a recording of the petitioner's immunized statements during an interrogation of the petitioner's codefendant. *Id.* at 197-98. In the recording, the petitioner stated that his codefendant had committed the murder alone. *Id.* at 197. Before hearing the recording, the codefendant had consistently denied his involvement. *Id.* at 220. However, after he heard the petitioner's accusation, the codefendant reacted angrily and accused the petitioner of the murder. *Id.* Over the following two days, police continued to interview the codefendant, and he ultimately confessed to his participation in the crime. *Id.* at 219. Based on those facts, we held that the state could not show that, absent the illegality, the codefendant "would have—not just might have—made the statement that he did and that statement would have resulted in his making the same subsequent statements." *Id.* at 220.

In *State v. Paz*, 31 Or App 851, 873, 572 P2d 1036 (1977), *rev den*, 282 Or 189 (1978), we also rejected the state's inevitable-discovery argument with respect to a defendant's statements. In that case, police interrogated the defendant after he invoked his right to counsel, and, during the interview, he confessed to murder. *Id.* at 855-56, 866. Police then allowed the defendant to speak to his parents over the telephone, and an interpreter took notes of the "incriminating telephone conversation." *Id.* at 853, 856. The state argued, among other things, that police obtained the second confession "as a result of investigative techniques which would have been employed regardless of whether the earlier confessions had been heard." *Id.* at 872-73. We reasoned that the state's argument was unsupported by the record because "police would have never had the opportunity to hear [the] defendant's telephone conversation if he had not [previously] confessed." *Id.* at 873. Instead, "[o]nly after the police elicited the initial inadmissible confession did defendant change his mind and request to call his parents from the police station." *Id.* We reasoned that "[t]he inevitable-discovery exception * * * requires the state prove that the evidence in question would inevitably, without speculation, be discovered." *Id.* at 874. In *Paz*, we determined that it was "impossible" for the state to prove the "inevitability" of defendant's second confession. *Id.*

We reached a different result in *State v. Garrison*, 21 Or App 155, 156, 534 P2d 210 (1975), in which the defendant challenged the admission of an accomplice's statements as the fruit of statements obtained in violation of *Miranda*. In that case, police arrested and questioned the defendant's accomplice, and the accomplice initially denied his involvement in the crime. *Id.* at 158. After police confronted the accomplice with the defendant's unlawfully obtained statements, the accomplice confessed. *Id.* At the suppression hearing, the accomplice testified that he *would have confessed even if* the officers had not conveyed defendant's accusations because "he had told four other persons about being involved in the crime." *Id.* at 158-59. We held that the accomplice's statements were admissible against the defendant because there was evidence to support the trial court's finding that "discovery of the challenged evidence was inevitable." *Id.* Thus, the only occasion in which we have held

that statements would have been inevitably discovered was one in which the person explicitly stated that he would have confessed despite the illegality.

Here, the state has failed to provide sufficient evidence to support a finding that defendant would have inevitably confessed to the second Lone Oak robbery and the three others. With respect to the procedures that police would have used, the state has provided evidence that police would have interviewed defendant about the second Lone Oak robbery at some point in the future. The state argues that, during this future interrogation, defendant would have mentioned the other robberies, or police would have asked defendant "whether he wanted to tell them anything else." Beyond that, the state does not point to any specific procedure or practice that would have dictated the timing or scope of the interrogation. *Cf. Lovaina-Burmudez*, 257 Or App at 19 (finding "gaps and deficiencies in proof" when the state failed to precisely outline the chain of procedural steps that would have inevitably led to the discovery of evidence). Even if we assume that the state's assertions are sufficient to establish a predictable investigatory procedure, the fact that police would have interviewed defendant and asked follow-up questions does not alone establish that the interview "*would have resulted* in the discovery of the evidence in question." *Miller*, 300 Or at 220 (emphasis added).

The state was required to establish not only the precise procedures that police would have used absent the illegality, but also that defendant's *response* to those procedures would have been essentially the same. *See United States v. Vasquez de Reyes*, 149 F3d 192, 196 (3d Cir 1998) (reasoning that a statement is "by its very nature, evanescent and ephemeral," and "[s]hould the conditions under which it was made change, even but a little, there could be no assurance the statement would be the same"). Without such a showing, the state cannot establish that it would have inevitably obtained evidence that only existed in defendant's mind. *Cf. Lovaina-Burmudez*, 257 Or App at 19-20 (concluding that it was "insupportably speculative" to find that police would have discovered evidence six months after an unlawful seizure when the evidence would have otherwise remained in the defendant's possession for an unknown amount of time);

*State v. Astorga*, 225 Or App 42, 50, 200 P3d 170 (2008) (rejecting the state's inevitable-discovery argument as "built entirely on speculation" in part because defendant would have had the opportunity to dispose of the evidence before predictable procedures would have led to his seizure). Here, it is mere speculation to conclude that, had police not first confronted defendant with evidence about the Plaid Pantry incident and the US Bank robbery, defendant would have responded to the second Lone Oak robbery evidence in precisely the same way. Although the record provides some support for the state's characterization of defendant's motivations, those motivations do not establish the requisite degree of certainty required to purge the taint of the illegality.

The record reveals that defendant confessed in part because he hoped to obtain a shorter sentence that he could serve in federal custody. The state argues as much, and the interrogation transcript shows that defendant confessed to the additional robberies after weighing his "odds" of getting favorable treatment. Yet, the state fails to account for the fact that defendant only made his "offer" regarding the other robberies after he was confronted by the weight of evidence against him in the charged felon-in-possession case and the US Bank robbery. *Cf. Paz*, 31 Or App at 873 ("Only after the police elicited the initial inadmissible confession did defendant change his mind and request to call his parents[.]"). Moreover, even after the interrogation shifted to the 2012 Lone Oak robbery, Kistner referred back to the strength of the evidence in the US Bank and Plaid Pantry cases. Even if we could infer from defendant's testimony at the suppression hearing that he "originally" confessed to "get stuff off [his] chest" and "[s]tart another life," that does not demonstrate that the unlawful questioning played no role in defendant's urge to come clean. Thus, defendant's testimony is insufficient to support a finding that he would have confessed to all of the robberies despite the unlawful questioning. *Cf. Garrison*, 21 Or App at 158-59 (upholding the admission of statements after the speaker testified that he would have confessed regardless of exposure to the unlawfully obtained information). Finally, although the record does support the state's contention that defendant was angry that others had implicated him in the 2012 Lone Oak robbery, the state has

not demonstrated why that anger—alone or in combination with defendant's other motivations—rendered his further confessions inevitable. For all of these reasons, we conclude that there is insufficient evidence in the record from which a court could find that police would have inevitably discovered defendant's confessions in the absence of the unlawful interrogation that preceded them.[8]

Apart from the inevitable-discovery doctrine, the state can disprove exploitation by showing that defendant's voluntary choice was "independent of, or only tenuously related to, the unlawful police conduct." *Unger*, 356 Or at 76 (internal quotation marks omitted). On appeal, the state does not clearly raise an attenuation argument; to the extent that the trial court may have rested its conclusion on attenuation, it erred. The record does not establish that the unlawful questioning did not significantly affect defendant's decision to confess. *See id.* ("A causal connection requiring suppression also may exist because the unlawful police conduct, even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent." (Internal quotation marks omitted.)). To the contrary, defendant suggested that he could offer information about other armed robberies only after being questioned about the Plaid Pantry incident and the US Bank robbery, but before the Lone Oak Tavern had even been mentioned. Thus, while the record does show that defendant was motivated to get a "better deal" for himself, the state has failed to show that the unlawful questioning did not influence defendant to seek a "better deal" in the first place.

Accordingly, because the state has failed to provide sufficient evidence to support a conclusion that defendant's statements were "obtained by means separate from the unlawful interrogation," all of defendant's incriminating

---

[8] The state contends that the trial court implicitly found that defendant would have confessed despite the illegality and argues that we must defer to that finding if there is any evidence to support it. We disagree. First, as noted above, the state has not demonstrated that any such finding was a necessary predicate to the trial court's conclusion. *Cf. Pereida-Alba*, 356 Or at 671 ("If an implicit factual finding is not necessary to the trial court's ultimate conclusion * * *, then the presumption [that it made such a finding] does not apply."). Second, even if we assumed that the trial court necessarily made such a finding, we conclude that that finding is not "fairly supported by the record." *Miller*, 300 Or at 227.

statements should have been suppressed. *Beltran-Solas*, 277 Or App at 669 (internal quotation marks omitted).

We will not reverse a conviction on grounds of evidentiary error if there is "little likelihood" that the error affected the jury's verdict. *State v. Davis*, 336 Or 19, 32-33, 77 P3d 1111 (2003); *see Miller*, 300 Or at 220 ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." (Quoting OEC 103(1).)). Here, we cannot conclude that there is "little likelihood" that the admission of defendant's statements admitting that he committed the armed robberies at issue in Counts 5 through 8 affected the verdict as to those counts. Accordingly, we conclude that the denial of defendant's motion to suppress was not harmless as to Counts 5 through 8.[9]

In sum, we accept the state's concession and conclude that police violated defendant's right to counsel under Article I, section 11, when they questioned him about the US Bank robbery. That robbery had sufficient temporal, evidentiary, and investigative overlap with the charged felon-in-possession case such that it was reasonably foreseeable that defendant would make statements relating to the latter during the interview. Moreover, the state has failed to meet its burden of showing that police did not exploit the constitutional violation to obtain incriminating statements about the four other robberies. Accordingly, we reverse and remand the judgment of conviction with respect to Counts 1 through 4 and Counts 9 and 10 so that defendant may decide whether to withdraw his guilty plea. Because we cannot conclude that there is "little likelihood" that the admission of defendant's incriminating statements affected the verdicts on Counts 5 through 8, we reverse and remand those counts for further proceedings.[10]

Reversed and remanded.

---

[9] We do not engage in harmless-error analysis with respect to the counts encompassed by defendant's guilty plea, because to do so "would defeat [defendant's] *** statutory right" under ORS 135.335(3) to withdraw his conditional plea. *State v. Dinsmore*, 182 Or App 505, 519, 49 P3d 830 (2002).

[10] Our disposition obviates the need to reach defendant's *pro se* arguments.